# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Staff Sergeant JOHNNY A. ESCOBAR
### United States Air Force

### ACM 38343

### \_\_\_\_ M.J. \_\_\_\_

### 16 September 2014

Sentence adjudged 8 March 2013 by GCM convened at Aviano Air Base, Italy.  Military Judge:  Dawn R. Eflein (sitting alone).

Approved Sentence:  Dishonorable discharge, confinement for 20 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant:  Captain Michael A. Schrama.

Appellate Counsel for the United States:  Major Daniel J. Breen; Major Roberto Ramírez; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final publication.

MITCHELL, Senior Judge:

A general court-martial composed of a military judge convicted the appellant, pursuant to his pleas, of two specifications of aggravated sexual contact with a child who was under 12 years of age; two specifications of indecent liberties with a child; one specification of indecent conduct with a child; one specification of producing child pornography; and one specification of possessing child pornography, in violation of

Articles 120[1] and 134, UCMJ, 10 U.S.C. §§ 920, 934.  The court sentenced the appellant to a dishonorable discharge, confinement for 22 years, forfeiture of all pay and allowances, and reduction to E-1.  Consistent with the terms of a pretrial agreement, the convening authority approved only 20 years of confinement but approved the remainder of the sentence as adjudged.

The appellant alleges that he was held in pretrial confinement with foreign nationals in violation of  Article 12, UCMJ, 10 U.S.C. § 812, and that the conditions of his confinement while in the Italian prison system violated Article 13, UCMJ, 10 U.S.C. § 813.  Although not raised by the appellant, we also address errors in the staff judge advocate's recommendation (SJAR) and its addendum.  We conclude that the appellant is entitled to relief solely on this last issue.

*Background*

The appellant was assigned to Camp Darby, Italy.   On 13 May 2012, an anonymous email was received by the Italian Sigonella Carabinieri[2] Station.  The e-mail alleged that a young female was being sexually abused and photographs of her abuse were posted on a particular website.  The Sigonella Carabinieri conducted a joint investigation with the Naval Criminal Investigative Service and the Air Force Office of Special Investigations (AFOSI).  The investigation identified the victim as a six-year-old child who resided in Italy near Camp Darby.  Further investigation revealed that the appellant was the abuser depicted in the photographs.

The carabinieri determined they needed to search the appellant's off-base residence.  Pursuant to Italian law, the appellant was required to be present at his residence when it was searched.  The Air Force was obligated under the North Atlantic Treaty Organization Status of Forces Agreement to make the appellant available.  Because the appellant was on vacation in Germany, agents from the AFOSI detachment at Ramstein Air Base (AB), Germany, detained the appellant, and he underwent a sexual assault examination.  The appellant's first sergeant flew to Germany and escorted him back to Italy.

When they returned to Italy, the appellant was transferred to the custody of the carabinieri.  The carabinieri escorted the appellant to his residence and searched it.  At that time, the carabinieri believed that Italian citizens may have been involved in the

---

[1]  The Article 120, UCMJ, 10 U.S.C. § 920, offenses were charged under the version of Article 120, UCMJ, contained in the National Defense Authorization Act for Fiscal Year 2006 (applicable to sex offenses committed during the period 1 October 2007 through 27 June 2012).

[2]  *Carabinieri* is the plural of the Italian word *carabiniere*.  *See* Collins English Dictionary–Complete and Unabridged (HarperCollins Pub. 2003), *available at* http://dictionary.reference.com/browse/carabinieri (defining carabiniere as: "A member of the Italian national police force, organized as a military unit and charged with maintaining public security and order as well as assisting local police.") (last visited 20 August 2014).

offenses. Although AFOSI agents were present during the search, at that time both the Italian officials and the AFOSI agents regarded it as an Italian investigation. The carabinieri seized media devices and other evidence from the appellant's residence and, after the search, placed the appellant into confinement.[3] He was originally confined by the Italians in Pisa, Italy. On approximately 8 June 2012 he was transferred to an Italian confinement facility near Florence, Italy, because the prosecutor in Florence had jurisdiction over the type of offenses allegedly committed by the appellant while the prosecutor in Pisa did not.

The Air Force sought jurisdiction of the appellant and his offenses from Italian authorities. On 7 June 2012, the Aviano AB staff judge advocate (SJA) sent a formal request for primary jurisdiction to the Italian Minister of Justice. In his request, the SJA noted that although this was a case of concurrent jurisdiction, the Air Force was asserting its right to primary jurisdiction because the victim was an Air Force dependent and not an Italian citizen. The SJA requested the appellant's release from Italian confinement and for the carabinieri to provide all evidentiary items to the AFOSI. After this request, members of the SJA's office made multiple phone calls to Italian prosecutorial officials but did not receive custody of the appellant. On 2 August 2012, the SJA requested formal assistance from the United States Sending State Office[4] in obtaining jurisdiction over the appellant. The SJA sent a follow-up letter to that office on 16 August 2012.

On 17 August 2012, the appellant was returned to military authorities, and his commander ordered him into immediate pretrial confinement. A pretrial confinement hearing was held the next day with the reviewing officer deciding to continue pretrial confinement. The appellant remained in military pretrial confinement until his court-martial.

The military judge awarded the appellant day-for-day credit for the 85 days he spent in Italian confinement. *See United States v. Pinson*, 54 M.J. 692, 694–95 (A.F. Ct. Crim. App. 2001) (concluding day-for-day credit applies when a member is held in pretrial confinement by a foreign government).[5] At trial, the appellant contended that he was entitled to additional credit for the time he spent in the Italian confinement system. The appellant asserted that because he was in immediate association with foreign nationals—namely Italians—while in Italian confinement, this constituted a violation of

---

[3] An Air Force Office of Special Investigations agent testified that while the carabinieri were searching the appellant's residence, the appellant asked them if he could be tried in the Italian court system because he did not want to be tried by the United States. He also offered to provide information to the carabinieri of others who uploaded pictures to the website.

[4] The United States Sending State Office for Italy is the United States Department of Defense diplomatic-legal office responsible for supervising the administration of the North Atlantic Treaty Organization Status of Forces Agreement in Italy. *See* U.S. SENDING STATE OFFICE, http://italy.usembassy.gov/ussso.html (last visited 20 August 2014).

[5] The military judge also awarded the appellant pretrial confinement credit for the days he spent in military pre-trial confinement. *See United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

Article 12, UCMJ. He also argued that his conditions of confinement while in Italian confinement were unduly harsh, entitling him to additional credit for violations of Article 13, UCMJ. Lastly, he argued that the military failed to abide by its own regulation, USAFE Instruction 51-706, *Foreign Countries: Exercise of Foreign Criminal Jurisdiction Over US Personnel* (26 November 2007), which "defines policy, responsibilities, and procedures for protecting the rights of U.S. personnel subject to foreign criminal jurisdiction," including the military's obligations to its members held in confinement by other nations.[6]

The military judge awarded the appellant an additional 140 days credit for the Government's violations of the USAFE Instruction. The military judge denied the motion for credit for alleged violations of Articles 12 and 13, UCMJ, stating:

> [T]he court finds that Article 12 and Article 13 do not apply to the Italian judicial system. Those are designed for military confinement or confinement facilities where we put people at the behest of the military, even if they are civilian confinement facilities. So those do not apply in this situation.

*Applicability of Articles 12 and 13, UCMJ*

The protections of Article 12, UCMJ, apply to members of the armed forces "everyplace," that is, in confinement facilities both within and outside the continental limits of the United States. *United States v. Wilson*, 73 M.J. 529, 533 (A.F. Ct. Crim. App. 2014), *aff'd*, *United States v. Wilson*, 73 M.J. 404 (C.A.A.F. 2014). However, we conclude that the protections of Articles 12 and 13, UCMJ, apply only (1) to persons subject to the Code, (2) who are placed into confinement by or on behalf of persons subject to the Code, (3) for pending court-martial charges or as a result of a court-martial conviction. Accordingly, we concur with the military judge and deny the appellant any additional credit.

Interpreting the applicability of Articles 12 and 13, UCMJ, are issues of statutory interpretation, which we review de novo. *United States v. Wise*, 64 M.J. 468, 473–74 (C.A.A.F. 2007), *United States v. Zarbatany*, 70 M.J. 169, 174 (C.A.A.F. 2011).

> As in all statutory construction cases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.

---

[6] This regulation also appears as U.S. Army Europe Regulation 550–50 and CNE-C6F Instruction 5820.8K.

*Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (citations and internal quotation marks omitted). Whether the statutory language is ambiguous is determined "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

The language of Articles 12 and 13 is not plain and unambiguous on whether they apply to a military member detained by a separate sovereign pending criminal prosecution by that sovereign where such confinement is not at the behest of military authorities. Both articles are written in the passive voice, so it is not clear from the plain language who is prohibited from taking action in contravention of these articles.[7] Article 12, UCMJ, begins: "No member of the armed forces may be placed in confinement in immediate association with . . . ." Article 13, UCMJ, similarly begins: "No person, while being held for trial, may be subjected . . . ."

Unclear language can become clear, however, if the congressional intent behind the legislation is reviewed. *Wise*, 64 M.J. at 475; *United States v. Disney*, 62 M.J. 46, 51 (C.A.A.F. 2005) (looking, inter alia, to legislative history to define the purpose of a statute criminalizing the certain activities with explosive materials); *United States v. Reeves*, 62 M.J. 88, 93 (C.A.A.F. 2005) (invoking legislative history to understand the congressional purpose behind the Child Pornography Prevention Act of 1996); *Loving v. United States*, 62 M.J. 235, 241–42 (C.A.A.F. 2005) (relying on legislative history to glean the congressional intent behind Article 76, UCMJ, 10 U.S.C. § 876).

Having looked at the legislative history of Article 12, UCMJ, we conclude this statutory provision was not intended to apply to situations where a foreign sovereign is imprisoning a military member for violations of that sovereign's laws.

> The legislative history surrounding Article 12, UCMJ, identifies the concerns it sought to address. Article 12, UCMJ, stems from conditions of confinement experienced in World War II, a still-recent event when the UCMJ was debated in 1950. During that war the various military branches conducted two million courts-martial of United States personnel. James B. Roan & Cynthia Buxton, *The American Military Justice System in the New Millennium*, 52 A.F. L. Rev. 185, 187 (2002). Some American servicemembers who had been convicted in these courts-martial had, at times, been held in prisons overseas with

---

[7] Compare Article 31(a), UCMJ, 10 U.S.C. § 831(a), which specifies: "No person subject to this chapter may compel any person . . . ."

prisoners of war or other enemy nationals. *See Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcommittee of the House Committee on Armed Services,* 81st Cong. 914–16 (1949), *reprinted in Index and Legislative History, Uniform Code of Military Justice* (1950) (not separately paginated).

*Wise*, 64 M.J. at 475.

The following testimonial exchange between Mr. Felix Larkin, Assistant General Counsel in the Office of the Department of Defense and Rep. John Anderson referenced both United States facilities and "foreign jails":

> MR. ANDERSON: [I]s there any place in the code that expresses prohibition against confining our men in foreign jails?
>
> MR. LARKIN: No; but this one prevents them being confined with enemy prisoners of war or foreign nationals not members in the same cell.
>
> . . . .
>
> MR. ANDERSON: [U]nder this code, could a commanding officer have an enlisted man . . . confined in a foreign jail?
>
> MR. LARKIN: Yes, he could, for a short time or whatever time is necessary. But if they are so confined they may not be in immediate association with any [foreign nationals].

*Wise*, 64 M.J. at 476 (quoting *Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcommittee of the House Committee on Armed Services,* 81st Cong. 915 (1949), *reprinted in Index and Legislative History, Uniform Code of Military Justice* (1950) (not separately paginated) [hereinafter "*House Subcommittee Hearings*"]).

Likewise the legislative history for Article 13, UCMJ, includes the following explanation:

> The provision as to the rigor of restraint is derived from present Army and Navy practice. The article also makes clear that a person being held for trial may be punished for offenses not warranting trial by court martial.

*House Subcommittee Hearings*, at 916.

Thus, the legislative history clarifies that the concern of Congress in enacting both Articles 12 and 13, UCMJ, was about actions taken by military authorities, not actions taken by separate sovereigns.

Our jurisprudence has long recognized the rights of sovereign nations to enforce their laws within their own borders. "[W]hen the offense is against the laws of another nation, primary jurisdiction lies with that nation, and only when [that nation] expressly or impliedly waives its jurisdiction will the provisions of the Uniform Code of Military Justice apply." *United States v. Murphy*, 18 M.J. 220, 233 (C.M.A. 1984) (quoting *Smallwood v. Clifford*, 286 F. Supp. 97, 101 (D.D.C. 1968)). In an unpublished decision, our colleagues in the U.S. Navy-Marine Corps Court of Criminal Appeals relied on this language to "conclude that the appellant's claim for credit based on the conditions of his confinement while held [by the military on behalf of the foreign government] pursuant to the [Status of Forces Agreement] is not reviewable under Article 13, UCMJ." *United States v. Suttle*, NMCCA 201100030, unpub. op. at 2 (N.M. Ct. Crim. App. 31 October 2011).[8]

This conclusion is also supported by the case law on the application of Article 31, UCMJ, 10 U.S.C. § 831, to investigations involving foreign law enforcement agents. "The fact that the individual is eventually tried by the military does not indicate that the foreign officials are agents of the military or that the investigations are so intertwined that rights' warnings would be required." *United States v. French*, 38 M.J. 420, 426 (C.M.A. 1993).

Additionally, the Supreme Court's decisions in a series of cases about American citizens who commit offenses while abroad and the limits of Constitutional reach into other lands provide persuasive authority:

> As Chief Justice Marshall explained nearly two centuries ago, "[t]he jurisdiction of the nation within its own territory is necessarily exclusive and absolute." *Schooner Exchange v. McFaddon*, 7 Cranch 116, 136, 3 L. Ed. 287 (1812). *See Wilson* [*v. Girard*, 354 U.S. 524, 529 (1957)] ("A sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction"); *Reid v. Covert*, 354 U.S. 1, 15, n. 29, 77 S. Ct. 1222,

---

[8] Similarly, in another unpublished decision, our court determined that an appellant was not entitled to Article 13, UCMJ, relief for time he spent in an Italian prison while the United States did not have jurisdiction over the case. *United States v. Marcuson*, ACM 33537 (A.F. Ct. Crim. App. 29 Feb 2000) (unpub. op.), *aff'd*, 54 M.J. 363 (C.A.A.F. 2000) (mem.).

1 L.Ed.2d 1148 (1957) (opinion of Black, J.) ("[A] foreign nation has plenary criminal jurisdiction . . . over all Americans . . . who commit offenses against its laws within its territory"); *Kinsella v. Krueger*, 351 U.S. 470, 479, 76 S.Ct. 886, 100 L.Ed. 1342 (1956) (nations have a "sovereign right to try and punish [American citizens] for offenses committed within their borders," unless they "have relinquished [their] jurisdiction" to do so).

This is true with respect to American citizens who travel abroad and commit crimes in another nation whether or not the pertinent criminal process comes with all the rights guaranteed by our Constitution. "When an American citizen commits a crime in a foreign country he cannot complain if required to submit to such modes of trial and to such punishment as the laws of that country may prescribe for its own people." *Neely v. Henkel*, 180 U.S. 109, 123, 21 S. Ct. 302, 45 L. Ed. 448 (1901).

*Munaf v. Geren*, 553 U.S. 674, 694-95 (2008) (all but second alteration in original).

In sum, Article 12, UCMJ, and Article 13, UCMJ, apply everywhere to the actions of military authorities who confine those subject to the Code pursuant to a completed or pending court-martial. The provisions do not provide protection to servicemembers who are confined by a separate sovereign pending criminal prosecution by that sovereign, where such confinement is not at the behest of military authorities.

*Error in Staff Judge Advocate's Recommendation on Forfeitures*

On 22 March 2013, the appellant requested the convening authority "defer all forfeitures and reduction in rank until . . . action" so the appellant could continue to provide financial support to his dependent minor child. On 26 March 2013, the convening authority denied the request. On 12 April 2013, the appellant requested the convening authority waive automatic forfeitures to be paid to his dependent child and to suspend the adjudged forfeitures and reduction in rank while the waiver was in effect. Trial defense counsel correctly explained that because there were adjudged forfeitures, those forfeitures would need to be suspended in order for the dependents to receive any benefits. The appellant renewed this same request in his clemency petition on 15 April 2013. In his addendum, the SJA recommended approving a waiver of the automatic forfeitures but did not recommend suspension of the reduction in rank or the adjudged forfeitures. The SJA advised the commander that "the total forfeiture of all pay and allowances is an administrative result of the sentence, and, therefore does not need to be suspended prior to waiving the automatic forfeitures." The convening authority

followed the SJA's advice and approved the adjudged total forfeiture of all pay and allowances, inter alia, and ordered the forfeitures executed. The convening authority also waived the automatic forfeitures to the benefit of the appellant's dependent child.

The appellant has not raised this issue on appeal. Therefore, we will apply the same test as if the error was in the initial SJAR and the appellant did not challenge it:

> If defense counsel does not make a timely comment on an error or omission in the SJA's recommendation, the error is waived unless it is prejudicial under a plain error analysis. Because [the a]ppellant did not object to the recommendation of the SJA, we must determine whether there was error, whether it was plain, and whether it materially prejudiced a substantial right of the accused. With respect to an error in an SJA's post-trial recommendation, the prejudice prong involves a relatively low threshold—a demonstration of some colorable showing of possible prejudice. Our review is de novo.

*United States v. Capers*, 62 M.J. 268, 269–70 (C.A.A.F. 2005) (citations and internal quotation marks omitted).

We find the SJA's advice to the convening authority regarding adjudged forfeitures is plain error that was materially prejudicial to a substantial right of the accused. Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.28.7 (6 June 2013), explains:

> The convening authority must defer, suspend, mitigate or disapprove all or part of adjudged total forfeitures in order to waive any amount of mandatory forfeitures. Mandatory forfeitures can be waived for the benefit of the accused's dependents only to the extent adjudged forfeitures are not in effect. See *United States v. Emminizer*, 56 M.J. 441 (C.A.A.F. 2002).[9]

We do not hold that the appellant has a right to the waiver of automatic forfeitures or to the deferral of adjudged forfeitures, but he has a right to have the convening authority make the decision based on accurate legal advice.

---

[9] We also recommend military justice practitioners review *United States v. Lundy*, 60 M.J. 52, 54–55 (C.A.A.F. 2004), for a comprehensive review of the interplay between adjudged and automatic/mandatory forfeitures.

"[T]he Courts of Criminal Appeals have broad power to moot claims of prejudice . . . ." *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998). In the case of plain error in the SJAR, Rule for Courts-Martial 1106(c)(6) provides that "appropriate corrective action shall be taken by appellate authorities without returning the case for further action by a convening authority." We therefore take corrective action that eliminates the prejudicial effect of the error and determine that the adjudged total forfeitures of pay and allowances should not be approved. *See United States v. Cook*, 46 M.J. 37 (C.A.A.F. 1997). We affirm the remainder of the approved sentence: a dishonorable discharge, confinement for 20 years, and reduction to E-1.

*Conclusion*

The findings and the sentence, as modified, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and the sentence, as modified, are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court