# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Technical Sergeant MARCO A. NAVARRO
### United States Air Force

## ACM 38790

## 29 September 2016

Sentence adjudged 23 October 2014 by GCM convened at Dyess Air Force Base, Texas.  Military Judge:  Wendy L. Sherman (sitting alone).

Approved sentence:  Dishonorable discharge, confinement for 34 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

Appellate Counsel for Appellant:  Major Thomas A. Smith, Major Michael A. Schrama, and Captain Jarett Merk.

Appellate Counsel for the United States: Major J. Ronald Steelman III and Gerald R. Bruce, Esquire.

Before

MAYBERRY, SANTORO, and C. BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge

A military judge sitting alone as a general court-martial convicted Appellant, pursuant to his pleas, of one specification of aggravated sexual contact on divers occasions with a child under age 12, one specification of abusive sexual contact on divers occasions with a child older than 12 but younger than 16 years of age, one specification of forcible sodomy on divers occasions with a child under age 12, and one specification of forcible sodomy with a child younger than 16 years of age, in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920, 925.

Contrary to his pleas, the military judge convicted Appellant of one specification of aggravated sexual contact on divers occasions with a child under age 12 and one specification of aggravated sexual contact with a child between 12 and 16 years of age by using strength sufficient that the child could not avoid or escape the contact, in violation of Article 120, UCMJ.[1] She also convicted him of one specification of forcibly sodomizing a child between 12 and 16 years of age on divers occasions, in violation of Article 125, UCMJ, and two specifications alleging indecent acts on divers occasions with a child under 16 years of age, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

The adjudged and approved sentence was a dishonorable discharge, confinement for 34 years, total forfeitures of pay and allowances, reduction to E-1, and a reprimand. The convening authority deferred both adjudged and mandatory forfeitures until action and waived mandatory forfeitures for six months for the benefit of Appellant's children and spouse.[2]

Appellant raises four assignments of error: (1) his conviction on one specification alleging indecent acts is factually insufficient, (2) he is entitled to relief for post-trial processing delay, (3) his conviction on a second specification alleging indecent acts is factually insufficient, and (4) his sentence is inappropriately severe.[3] We specified an additional issue related to the military judge's consideration of evidence pursuant to Mil. R. Evid. 414.

We conclude that the military judge erred in considering evidence pursuant to Mil. R. Evid. 414 and that the error was not harmless. We thus set aside the findings of guilt as to the affected specifications, which moots the first and third assignments of error. We affirm the findings with respect to the charges and specifications to which Appellant pled guilty, reassess the sentence, and decline to grant relief on his post-trial processing claim.

*Background*

Appellant and his wife, MB, had two sons, CN1 and CN2.[4] CN1 was born in 1998 and CN2 was born in 2000. Appellant's marriage to MB began deteriorating in 2009 and ultimately resulted in divorce. The separation and divorce resulted in Appellant's living alone with his two sons beginning in 2010 while stationed at Dyess Air Force Base (AFB), Texas. Appellant told the military judge that he was depressed and wanted human connection, so he began looking for reasons to engage in sexual behavior with his sons.

---

[1] Appellant pled guilty to the lesser-included offense of abusive sexual contact with a child but was convicted of the greater offense.
[2] We address an issue regarding adjudged and approved forfeitures in our analysis on the reassessed sentence.
[3] The third and fourth assignments of error are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).
[4] Both boys' initials are CN, so this opinion refers to the older as CN1 and the younger as CN2.

During a roughly five-year period, sometimes several times per week and sometimes skipping weeks, Appellant showered with CN2 and touched his genitals. Appellant repeatedly rubbed his (Appellant's) penis on CN2's buttocks and between his "butt cheeks" while both lay in Appellant's bed naked. Appellant taught CN2 how to perform fellatio and forced him both to perform and receive fellatio on multiple occasions. Appellant also engaged in anal sodomy with CN2 on multiple occasions. CN2 occasionally resisted Appellant's molestations, but Appellant used his superior physical strength to force the contact to occur. Appellant frequently ejaculated as a result of this contact. CN1 was present for some, but not all, of this contact. Some of the contact occurred prior to CN2's 12th birthday and the contact continued after he turned 12 years old.

Appellant also admitted that during a roughly two-year period, he touched CN1's genitalia on multiple occasions under circumstances similar to his molestation of CN2. Appellant taught CN1 how to masturbate and ejaculate. Like CN2, CN1 objected to Appellant's conduct, but Appellant was persistent and used his own hands to manipulate CN1's hands. This conduct occurred while CN1 was under 16 years of age. Appellant also admitted forcibly sodomizing CN1, and, in exchange, Appellant agreed to take the boys to Dairy Queen.

Appellant told both boys not to report his conduct and attempted to make them feel special by telling them they had a bond that others would not understand.

Additional facts necessary to resolve the assignments of error are included below.

*I. THE TRIAL*

*A. Appellant's Guilty Plea*

With respect to CN1, Appellant pled guilty to aggravated sexual contact by having him touch Appellant's genitalia on divers occasions and forcible sodomy while assigned to Dyess AFB. With respect to CN2, Appellant pled guilty to touching his genitalia, anus, and buttocks "at worldwide locations" on divers occasions between October 2007 and April 2012, before CN2 had attained the age of 12; doing the same on divers occasions while at Dyess AFB between April 2012 and June 2012, after CN2 had attained the age of 12 but had not yet attained the age of 16; and committing forcible sodomy with CN2 "at worldwide locations" on divers occasions between October 2007 and April 2012.

Following Appellant's entry of guilty pleas to those offenses, the military judge was advised that the parties had entered into a stipulation of fact. Before accepting the stipulation, the military judge told Appellant that the stipulation would be used in two ways: "to determine if you are, in fact, guilty of the offenses *to which you have pled guilty*," (emphasis added) and to determine an appropriate sentence. Appellant agreed to those uses

of the stipulation of fact and it was admitted into evidence against him. At no point did the military judge tell Appellant that his stipulation of fact could be used against him with respect to any contested offenses.[5]

The military judge next conducted the inquiry required by *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969). She began by telling Appellant that his statements would be used to determine whether he was guilty of the offenses *to which he pled guilty* but that he did not give up his constitutional rights (including the right against self-incrimination) with respect to the offenses to which he pled not guilty. She further told Appellant that any statements he made could be used in the sentencing portion of the trial. Finally, the military judge told Appellant that his admissions with respect to a lesser-included offense (LIO) could be used to establish certain elements of the greater offense. At no point did she ever advise Appellant that his statements may be used against him on any other contested, charged offenses.

Thereafter, Appellant admitted facts in support of his guilty pleas. At the conclusion of the *Care* inquiry, the military judge told Appellant that his pleas were "accepted," but she declined to enter findings consistent therewith because the Government intended to proceed to trial on the offenses to which Appellant had pled not guilty.[6]

## B. Trial on the Remaining Offenses

Prior to trial on the contested specifications, the Government asked the military judge, pursuant to Mil. R. Evid. 414, to consider Appellant's admissions in the stipulation of fact and *Care* inquiry when she determined whether Appellant was guilty of the remaining specifications.[7] Over defense objection, the military judge agreed to do so.[8]

---

[5] The record suggests that trial counsel and trial defense counsel did expect that the stipulation of fact would be used with respect to the contested charges. Trial defense counsel did not object to its consideration and the first paragraph of the stipulation states that it could be used in "any findings and sentencing proceedings" related to the charges and specifications referred to trial. The military judge did not discuss that statement with Appellant before she accepted the stipulation. Neither side identified the inconsistency between the stipulation (and the lawyers' apparent intent) and the military judge's statements to Appellant, and responded affirmatively when the military judge asked them whether they agreed that the stipulation could only be used in the ways she described.

[6] It appears the military judge declined to enter findings based on a note in Section 2-2-8 of the Department of the Army Pamphlet 27-9, *Military Judges' Benchbook* (1 January 2010), which advises judges not to enter guilty findings on a lesser-included offense when the government intends to attempt to prove the greater offense. Appellant pled guilty to only one lesser-included offense: abusive sexual contact with CN2 (the military judge subsequently convicted him of the greater offense of aggravated sexual conduct by force).

[7] Although the Government now argues that the military judge did not consider the stipulation of fact as substantive evidence, the record of trial does not support that conclusion. The trial counsel repeatedly referred to the stipulation of fact in his questioning of witnesses and did not cover information contained in the stipulation because, as he said on one occasion, "the military judge has a lot of detail from the Stipulation of Fact."

[8] The Government did not introduce any evidence in its case-in-chief, by testimony or otherwise, of Appellant's *Care* inquiry statements. Because all parties and the military judge assumed that Appellant's statements were in evidence, we shall do the same for purposes of our analysis.

The stipulation of fact was lengthy and provided background information about Appellant, the relationship he had with his wife and children, and detail about Appellant's repeated acts of sexual molestation of his sons, none of which was introduced or substantially repeated through other evidence in the government's case-in-chief.

Neither victim testified. However, pursuant to the pretrial agreement, the Government introduced recorded interviews of each. Both CN1 and CN2 told the interviewer of Appellant's sexual abuse, but the interviewer rarely obtained more than superficial information about the specific acts alleged. In one example, CN1 told the interviewer that Appellant touched his (CN1's) penis in the shower. The interviewer did not obtain any information about where or when this touching occurred, and at the end of the interview in an apparent attempt to summarize everything CN1 was reporting, the interviewer completely omitted any mention of this incident. The remainder of CN1's interview was similarly superficial and did not meaningfully differentiate CN1's statements about the admitted conduct from the contested conduct. While CN2's interview was slightly more detailed, nearly all of CN2's statements were agreement or disagreement with the interviewer's yes/no questioning.

The Government also introduced testimony from MB and her husband, DB. Among other things, MB testified about the initial disclosures made by CN1 and CN2, which were generally consistent with their statements to investigators, and their demeanor during those disclosures. She also testified that after CN1's initial disclosure, early in the stages of abuse, she confronted Appellant who admitted putting his penis in CN1's face and said it was a joke. MB did not take any action after that initial disclosure but did several years later when CN1 made his second disclosure. MB testified that Appellant frequently talked about his "special connection" with his sons, but she did not understand the import of that until she heard the boys' interviews with investigators.

DB testified about CN1 and CN2's disclosures to him, which again were generally consistent with their recorded interviews, as well as their demeanor during the disclosures. DB also provided screen shots from text message conversations with Appellant after DB confronted him. In the text messages, Appellant begs DB not to "end [his] life," by reporting his conduct. Finally, DB testified that he witnessed both boys' interviews with investigators, and that both victims' statements to investigators were consistent with what both boys had previously disclosed to him.

Without objection and pursuant to the terms of the pretrial agreement, the Government also introduced recordings of two pretext telephone calls made to Appellant. We discuss the content of the pretext telephone calls more fully in our reassessment of the sentence, but of note is that while Appellant admitted engaging in criminal conduct, he did not directly admit to any of the contested conduct.

While there was evidence that one or both victims may have engaged in sexualized behavior that may have been inconsistent with their chronological age—masturbation and a relationship with another young boy—this evidence could as easily have been the result of the admitted offenses as the contested offenses.

Finally, the Government repeatedly used the stipulation of fact and Appellant's *Care* inquiry admissions in its opening statement and closing argument to bolster the victims' credibility and highlighted differences between the victims' statements and Appellant's admissions. In one example, the trial counsel argued that Appellant's desire to gratify his sexual desires with respect to the contested offenses was proven by "his own guilty plea." In another example, trial counsel argued that Appellant's pleas of not guilty were an effort to "mitigate and extend his sentencing argument," and used Appellant's *Care* inquiry statements to bolster that argument.

The military judge convicted Appellant of touching CN1's genitalia and buttocks "at worldwide locations" on divers occasions between October 2007 and October 2010, and fondling and placing his hands upon CN1 on divers occasions while at Ramstein AB.[9] She also convicted him of using force to engage in sexual contact with CN2 while at Dyess AFB; committing forcible sodomy with him on divers occasions while at Dyess AFB; and fondling him and placing Appellant's hand on CN2's genitals on divers occasions while at Ramstein AB.[10]

## II. LEGAL ANALYSIS

This procedural posture sets up three distinct but related questions: First, could Appellant's stipulation of fact properly be used as evidence against him with respect to any of the contested specifications other than the greater offense of the LIO to which he pled guilty? Second, could his *Care* inquiry admissions properly be used as evidence against him with respect to any of the contested specifications other than the greater offense? And third, could evidence that he molested CN1 or CN2 properly be considered pursuant to Mil. R. Evid. 414 on the contested specifications?

### A. *Use of the Stipulation of Fact*

The use of the stipulation of fact on the contested specifications was error. "Military law imposes an independent obligation on the military judge to ensure that the accused

---

[9] Appellant pled not guilty to, and was acquitted of, touching CN1's genitalia, anus, and buttocks "at worldwide locations" between October 2010 and June 2012, putting his penis in CN1's mouth on divers occasions while at Dyess AFB, and touching CN1's genitalia, anus, groin, and buttocks, while at Dyess AFB.

[10] Appellant pled not guilty to, and was acquitted of, penetrating CN2's anus and mouth with his penis on divers occasions while at Dyess AFB; touching CN2's genitalia, anus, groin, and buttocks on divers occasions while at Dyess AFB; and committing sodomy on divers occasions with CN2 while at Ramstein AB.

understands what he gives up because of his plea and the accused's consent to do so must be ascertained." *United States v. Resch*, 65 M.J. 233, 237 (C.A.A.F. 2007). In this case, the colloquy between the military judge and Appellant about the stipulation of fact was insufficient to ensure that Appellant understood the effect of the stipulation of fact he entered into with the Government.[11]

### B. Use of the Care *Inquiry*

An accused's statements in a *Care* inquiry are not "available as evidence tending to prove an entirely different offense when neither offense is included in the other as a lesser offense thereof." *United States v. Dorrell*, 18 C.M.R. 424, 425 (1954). The policy limiting the use of judicial admissions made during a guilty plea inquiry is a long-standing tenet of military justice: "To hold a plea of guilty to one offense as an admission supplying a fact common to that offense and also to a completely separate offense to which the accused has pleaded not guilty would in effect deprive the accused of a substantial right accorded him by law." *United States v. Caszatt*, 29 C.M.R. 521, 706-07 (C.M.A. 1960); *see also United States v. Flores*, 69 M.J. 366, 369-70 (C.A.A.F. 2011) ("A military judge who advises an accused that she is waiving her right against self-incrimination only to the offenses to which she is pleading guilty must not later rely on those statements as proof of a separate offense.") A plea of guilty to a lesser-included offense may, however, be used to establish elements common to both the charged and lesser-included offense. *Dorrell*, 18 C.M.R. at 425-26.

### C. Evidence Considered Pursuant to Mil. Evid. 414

Mil. R. Evid. 414 permits the admission of evidence of "any other offense of child molestation" to show propensity to commit a charged act of "child molestation." A military judge must make three threshold findings: (1) the accused must be charged with an offense of child molestation as defined by Mil. R. Evid. 414, (2) the proffered evidence must be evidence of the accused's commission of another offense of child molestation as defined by Mil. R. Evid. 414, and (3) the evidence must be relevant under Mil. R. Evid. 401 and 402. *United States v. Yammine*, 69 M.J. 70, 73-74 (C.A.A.F. 2010).

We review the military judge's admission of Mil. R. Evid. 414 evidence under an abuse of discretion standard. *United States v. Dewrell*, 55 M.J. 131, 137 (C.A.A.F. 2001).

---

[11] Even if there were an argument that Mil. R. Evid. 414 changes this long-standing precedent with respect to the permissible uses of *Care* inquiry statements, we would still conclude that use of Appellant's *Care* inquiry statements against him in this case violated his right against self-incrimination. He could not knowingly, intelligently, and consciously waive his right against self-incrimination—or determine whether doing so would be in his best interest—when the military judge essentially changed the rules on him with no warning. It was only after he admitted guilt, and after the military judge had told him that what he said could not be used against him with respect to the contested specifications, that she agreed to do just that. Appellant was placed in a situation from which there was no meaningful escape. He could withdraw his pleas and lose the benefit of his pretrial agreement or he could persist in his pleas and be forced to give up his constitutional right against self-incrimination with respect to charges he contested.

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *United States v. Solomon*, 72 M.J. 176, 180 (C.A.A.F. 2013) (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)). "A military judge abuses [her] discretion when: (1) the findings of fact upon which [she] predicates [her] ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if [her] application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

But for the military judge's decision not to enter findings on the charged offenses to which Appellant pled guilty, this case would initially appear to be in the same posture as *United States v. Wright*, 53 M.J. 476 (C.A.A.F. 2000). In *Wright*, the accused pled guilty to, and had findings of guilty entered on, the offense of indecently assaulting victim 1. He pled not guilty to rape and a second specification of indecent assault, both involving victim 2 and occurring at a different time and place. Pursuant to Mil. R. Evid. 413, the Government used evidence of the assault on victim 1 to prove that he had also committed the rape and indecent assault of victim 2. Our superior court held that this use of Mil. R. Evid. 413 was not error. *Wright*, 53 M.J. at 483.

Each service court of criminal appeals to consider the issue had determined that Mil. R. Evid. 413 (and by extension Mil. R. Evid. 414)[12] was constitutional when applied to charged conduct as long as the appropriate threshold inquiries and safeguards were met. *United States v. Barnes*, 74 M.J. 692 (A. Ct. Crim. App. 2015); *United States v. Bass*, 74 M.J. 806 (N.M. Ct. Crim. App. 2015); *United States v. Maliwat*, ACM 38573 (A.F. Ct. Crim. App. 19 October 2015) (unpub. op.). Our superior court, however, recently held otherwise and overruled the service courts. In *United States v. Hills*, the court concluded that "[n]either the text of [Mil. R. Evid.] 413 nor the legislative history of its federal counterpart suggests that the rule was intended to permit the government to show propensity by relying on the very acts the government needs to prove beyond a reasonable doubt *in the same case*." 75 M.J. 350, 352 (C.A.A.F. 2016) (emphasis added).

Hills was charged with abusive sexual contact and two specifications of sexual assault. All of the alleged criminal acts occurred at the same time and place and with the same victim. Hills pled not guilty to all charges and specifications. At trial, over defense objection, the military judge granted the government's motion, pursuant to Mil. R. Evid. 413, to admit all of Hills' charged conduct as evidence of his propensity to commit the sexual assaults with which he was charged.

In finding that the military judge erred, our superior court said, "it seems obvious that it is impermissible to utilize [Mil. R. Evid.] 413 to show that charged conduct

---

[12] *United States v. Dewrell*, 55 M.J. 131, 138 n.4 (C.A.A.F. 2001) ("[a]s Rules 413 and 414 are essentially the same in substance, the analysis for proper admission of evidence under either should be the same").

demonstrates an accused's propensity to commit . . . the charged conduct." *Hills*, 75 M.J at 353 (ellipsis in original). The court further noted that neither it nor any Federal Circuit Court of Appeals has permitted Mil. R. Evid. 413 (or its Federal counterpart) evidence "of charged conduct to which an accused has pleaded not guilty in order to show a propensity to commit the very same charged conduct." *Id.* at 354.

Finally, the court noted that Mil. R. Evid. 413

> was intended to address recidivism, and it permits bolstering the credibility of a victim because [k]nowledge that the defendant has committed rapes on other occasions is frequently critical in assessing the relative plausibility of [the victim's] claims. While [Mil. R. Evid.] 413 was intended to permit the members to consider the testimony of *other victims* with respect to an accused's past sexual offenses, there is no indication that [Mil. R. Evid.] 413 was intended to bolster the credibility of the named victim through inferences drawn from the same allegations of the same named victim.

*Id.* at 355 (quotation marks and citations omitted) (second and third alterations in original) (emphasis added).

The facts of the instant case are somewhere between *Wright* and *Hills*. On the one hand, Appellant clearly intended to plead guilty to acts of child molestation and those offenses would not be part of the fact-finder's deliberation on the contested charges. *Hills*, 75 M.J at 354. Although the military judge did not enter findings on the admitted allegations until after she had deliberated on the contested specifications, we see nothing in the record of trial to call into question the factual or legal basis of Appellant's guilty pleas. We do not believe the outcome in this case should turn on whether the military judge entered findings of guilt on the admitted charges before she deliberated on the contested charges. While in hindsight it might have been preferable to have announced findings as suggested by the *Military Judges' Benchbook* (i.e., on all admitted specifications except the lesser-included offense), deciding this case on that basis would elevate form over substance. *See McCarthy v. United States*, 394 U.S. 459, 467 n.20 (1969) ("[M]atters of reality, not mere ritual, should be controlling.") (quoting *Kennedy v. United States*, 397 F.2d 16, 17 (6th Cir. 1968)).[13]

On the other hand, although Appellant told the military judge he wanted to plead guilty and made admissions consistent with that desire, there was no adjudication of guilt before his admissions were considered with regard to the offenses to which he pled not

---

[13] In other cases, there may be a meaningful distinction between admitting the fact that an accused had previously been convicted of a sexual assault versus admission of the facts underlying the conviction. We see no reason to draw such a distinction here.

guilty. Additionally, unlike in *Wright*, the conduct alleged in this case was with the same victims and often occurred at substantially the same times and places, suggesting that its admission would serve to bolster the credibility of the very same victims. Or, to put it more simply, admission of this evidence would enable the Government to argue, "Your Honor, if he admitted he did all of these other things to the same two boys, that must mean they're telling the truth about these other things they said he did to them as well." The prosecutor in this case made essentially that argument, and that appears to be the bolstering *Hills* said is inappropriate.

We read our superior court's decision in *Hills* to say that although *Wright* still stands for the proposition that conduct to which an accused pleads guilty may properly be admitted as "evidence to bolster another charge, so [long as] it was no longer an offense on which the members had to deliberate," *Hills*, 75 M.J at 354, that is not the case when the evidence was "intended to bolster the credibility of the named victim through inferences drawn from the same allegations of the same named victim." *Id.* at 355.[14]

Based on our understanding of our superior court's rationale, we must conclude that the military judge abused her discretion (in that she applied an erroneous view of the law) when she considered that Appellant molested CN1 on other occasions as propensity evidence with respect to the contested specifications involving CN1. Likewise, we conclude that it was error to consider that Appellant molested CN2 on other occasions as propensity evidence with respect to the contested specifications involving CN2.

It is less clear, however, whether Appellant's admissions about his conduct with CN1 or CN2 were admissible as propensity evidence with regard to the specifications involving the other victim. Although it is true that the victims are different (as in *Wright*), the victims are brothers, reported substantially similar conduct at substantially the same time, had discussed the allegations with each other, and described some events in which both were victimized simultaneously. We conclude that this scenario is distinguishable from *Wright* and that our superior court would share the same concerns about the admission of evidence in this case as they did in *Hills*. We, therefore, also conclude that it was error to consider, pursuant to Mil. R. Evid. 414, evidence of Appellant's molestation of CN1 as evidence on the contested crimes against CN2 and vice versa. Our conclusion that the military judge erred in several respects (and the appropriate remedy for those errors) is based on the extremely unusual procedural posture of this case. We do not conclude that a stipulation of fact or *Care* inquiry may _never_ be considered as substantive evidence under Mil. R. Evid. 414. We only conclude that under the circumstances of this case it was error.

---

[14] We recognize that our superior court also noted that Wright had pleaded guilty to the offense the government sought to admit under Mil. R. Evid. 413, and that as a result of his plea, Wright was no longer presumed innocent.

*D. Prejudice*

The military judge erred in considering the stipulation of fact and Appellant's *Care* inquiry statements for any purpose other than to establish the common elements of the lesser-included offense to which he pled guilty. This is an error of constitutional dimension. *See Flores*, 69 M.J. at 368. The test for determining whether constitutional error is harmless is whether, "beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence." *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005) (quoting *United States v. Kaiser*, 58 M.J. 146, 149 (C.A.A.F. 2003). An error is not harmless beyond a reasonable doubt when "there is a reasonable possibility that the [error] complained of might have contributed to the conviction." *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

The military judge also erred in considering, pursuant to Mil. R. Evid. 414, evidence of the crimes Appellant admitted in his *Care* inquiry when determining whether he was guilty of the contested charges and specifications. Erroneous admission of Mil. R. Evid. 414 evidence is usually a non-constitutional error tested only to determine whether it had "a substantial influence on the findings." *Solomon*, 72 M.J. at 182, *cited with approval in Hills*, 75 M.J. at 356. However, *Hills* noted that when the finder of fact is invited "to bootstrap their ultimate determination of the accused's guilt with respect to one offense using the preponderance of the evidence burden of proof with respect to another offense," this runs the risk of "undermining both 'the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt,'" both of which are constitutional in nature. *Hills*, 75 M.J. at 357 (quoting *Wright*, 53 M.J. at 481).[15]

Because this was a bench trial, there were no instructions given on the burden of proof or permissible use of the Mil. R. Evid. 414 evidence. The military judge told the parties,

> I will not confuse the acts that the accused had pled guilty to with the acts that prosecution seeks to prove up that are remaining on the Charge Sheet. The evidence does contribute to the fact finder arriving, though, at a verdict on the other charges provided that it's used properly. And I can assure the parties that I will appropriately avoid spillover as I am required to do. . . . Again, and in this judge alone trial, I will not use the proffered evidence for any improper purpose such as discussed by the defense counsel like spillover.

---

[15] An appellant may waive constitutional and evidentiary rights and objections. Had Appellant been properly advised with respect to the uses of the stipulation of fact or whether (or what) use may have been made of his allocution, the outcome may well have been different.

The military judge did not articulate what she believed was the proper use of this evidence or whether she intended to apply the standards contained in the pattern instruction found in the *Military Judge's Benchbook* (the use of which our superior court found to be constitutional error in *Hills*).[16]

The evidence on the contested specifications, as outlined above, was far from overwhelming. The question is not whether the factfinder *may* have reached the same result without considering the erroneously-admitted evidence. It is also not whether we ourselves believe Appellant may be guilty of any or all of the contested offenses. On this record, we cannot conclude that the erroneously-considered evidence did not *at least* substantially influence the findings.[17] We therefore set aside and dismiss with prejudice the findings of guilt with respect to all offenses other than those to which Appellant entered provident guilty pleas.[18]

*Post-Trial Processing*

Trial concluded on 24 October 2014. The record of trial was completed on 3 December 2014. Appellant provided clemency matters pursuant to Rule for Court-Martial (R.C.M.) 1105 on 12 February 2015. The convening authority took action on 1 March 2015 and, on 11 March 2015, substituted a second action to correct an administrative error on the first.

Appellant asserts this court should grant him relief in light of the 128 days that elapsed between the completion of trial and the convening authority's first action or, in the alternative, relief for the 138 days that elapsed between completion of trial and the convening authority's substituted action. Under *United States v. Moreno*, courts apply a presumption of unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial." 63 M.J. 129, 142 (C.A.A.F. 2006). Appellant does not assert any prejudice, and we independently find Appellant suffered no prejudice from the delay that would authorize *Moreno* relief.

---

[16] Trial counsel did, in fact, request that the military judge use the pattern instruction from the *Military Judges' Benchbook*, arguing that the "instruction that you would give is strong and the accused's predisposition to engage in child molestation is something you can fairly consider, given the abuse that he pled guilty to and that he described; same victims, always the same setting, same things." Nothing the military judge said suggested she viewed the law differently. While under other circumstances the military judge would be entitled to the presumption that she knew and followed the law with respect to proper uses of Mil. R. Evid. 414 evidence, the state of this record does not enable us to apply that presumption.

[17] Because the error was not harmless under the lower, non-constitutional, standard, it must necessarily also not have been harmless under the higher constitutional standard.

[18] We are cognizant of our authority to order a rehearing on the specifications whose findings of guilt we set aside. Article 66(d), UCMJ, 10 U.S.C. § 866(d). The findings we affirm meaningfully reflect the gravamen of Appellant's criminal conduct. We are able to reassess Appellant's sentence on the remaining specifications and the sentence as reassessed appropriately serves Appellant's, the victims', and society's interests in the justice and the finality of verdicts. We, therefore, decline to authorize a rehearing on the contested specifications.

Appellant instead argues the court should nonetheless grant relief under *United States v. Tardif*, 57 M.J. 219, 223-24 (C.A.A.F. 2002). Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), this court is empowered "to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a), if it deems relief appropriate under the circumstances." *Tardif*, 57 M.J. at 224 (quoting *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000)). In *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006), our superior court held that a service court may grant relief even when the delay was not "most extraordinary." The court held, "The essential inquiry remains appropriateness in light of all circumstances, and no single predicate criteria of 'most extraordinary' should be erected to foreclose application of Article 66(c), UCMJ, consideration or relief." *Id.*

This court set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). Those factors include how long the delay exceeded appellate review standards, the reasons noted by the government for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or the institution, the goals of justice and good order and discipline, and, finally, whether the court can provide any meaningful relief given the passage of time. *Id.* No single factor is dispositive, and we may consider other factors as appropriate. *Id.*

The Government submitted an affidavit from the non-commissioned officer in charge (NCOIC) of military justice for the installation legal office that prosecuted Appellant's case. The NCOIC's affidavit outlines the milestones in the post-trial processing of this case, including Appellant's approved request for a 20-day extension to submit clemency matters to the convening authority.[19] Appellant does not allege bad faith or gross negligence. The record of trial spanned seven volumes. The most significant gap occurred during the December holiday period. Appellant's assertion of his right to speedy post-trial processing occurred 330 days after the case was docketed before us and after he had requested five enlargements of time.

Applying the *Gay* standards, we conclude Appellant is not entitled to any *Tardif* relief. The relatively minor nature of the post-trial processing delay, given the factors involved, does not rise to the level which would adversely affect the public's perception of the fairness and integrity of the military justice system, nor is necessary to vindicate Appellant's right to timely post-trial processing.

---

[19] Our Army colleagues have concluded that the statutorily-authorized 20-day extension to submit clemency matters should not be counted when determining compliance with *Moreno*. *United States v. Banks*, __ M.J. __, Army 20130948 (Army Ct. Crim. App. 16 August 2016). In resolving this assignment of error we neither adopt nor reject *Banks*, as we conclude that on the facts of this case the result would be the same.

Having set aside and dismissed with prejudice the guilty findings on all but the offenses to which Appellant pled guilty, we must either reassess Appellant's sentence or remand for a rehearing on sentence. Applying the analysis set forth in *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013); *United States v. Buber*, 62 M.J. 476 (C.A.A.F. 2006); *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006); and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and carefully considering the entire record and the totality of the circumstances, we are confident that we can reassess the sentence. There has not been a change in the penalty landscape as Appellant's guilty pleas already subjected him to confinement for life without the possibility of parole.

Appellant's conduct was particularly aggravated. In addition to repeatedly molesting and sexually assaulting his sons over a prolonged period and causing them life-long trauma, Appellant displayed a shocking attitude toward his conduct (which is indicative of his rehabilitation potential) in his conversation with DB on the pretext telephone call. With respect to the Dairy Queen incident, Appellant said that he suggested the boys perform fellatio on him as a joke and before he could stop them, CN1 exposed Appellant's penis and engaged in sodomy "with a smirk on his face." Appellant also said that 98% of the time, the boys would come into his bedroom knowing that he slept in the nude, reach under the covers, and "play with" him.

Appellant also made comments suggesting that he was proud of the close relationship he had with his sons. He told DB that his sons would jump into the shower with him on their own (which was inconsistent with, and not credible when compared to the victims' statements).

Appellant told DB that he had been researching pedophilia and did not think he was a pedophile because he was not having fantasies about children. When DB asked whether Appellant had ever asked the boys to have sexual contact with each other, or record their sexual activities, Appellant replied, "I don't think they would do that (unintelligible) anyway, but, I never thought of that, no. I never thought of that." Appellant later told DB that he was seeking counseling, that his fantasies were trending toward younger people, that "there's something wrong with [him]," and that he wanted to get fixed.

Throughout the call, Appellant blamed his sons for initiating the sexual contact. He also rationalized his conduct by repeatedly saying that he did not force his sons to engage in the conduct or do anything to "lure" them in. Appellant told DB that his sons performed sex acts with and for him because they wanted to and that he just let things happen.

The trial was before a military judge and the offenses to which Appellant pled guilty are ones with which we have experience and familiarity. Therefore, we are confident that we can reliably determine that, even if the military judge had sentenced Appellant only for

the offenses to which he pled guilty, the military judge would have imposed a sentence of no less than a dishonorable discharge, 29 years of confinement, total forfeitures, reduction to E-1, and a reprimand. In reassessing Appellant's sentence, we necessarily have also concluded that the reassessed sentence is appropriate. We assess sentence appropriateness by considering Appellant, the nature and seriousness of the offense, Appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), aff'd, 65 M.J. 35 (2007). The maximum imposable sentence was a dishonorable discharge, confinement for life without the possibility of parole, total forfeitures, reduction to E-1, and a reprimand. Appellant had negotiated a pre-trial agreement with the convening authority limiting confinement to 35 years; no other sentence components were affected by the pre-trial agreement. The reassessed sentence is less than the maximum sentence Appellant himself had negotiated.

We must resolve one additional issue regarding Appellant's sentence. Appellant included a footnote in his pleading suggesting there was a possibility that the waived forfeitures had never in fact been paid to his ex-wife and current spouse. Since Appellant did not raise this issue as a legal error, we will apply the same test as if the error had been in the initial staff judge advocate's recommendation (SJAR) and went unchallenged.

> If defense counsel does not make a timely comment on an error or omission in the [SJAR], the error is waived unless it is prejudicial under a plain error analysis. Because [the a]ppellant did not object to the recommendation of the SJA, we must determine whether there was error, whether it was plain, and whether it materially prejudiced a substantial right of the accused. With respect to an error in an SJA's post-trial recommendation, the prejudice prong involves a relatively low threshold—a demonstration of some colorable showing of possible prejudice. Our review is de novo.

*United States v. Capers*, 62 M.J. 268, 269–70 (C.A.A.F. 2005) (citations and quotation marks omitted).

On 23 October 2014, Appellant asked the convening authority to "defer automatic forfeitures and reduction in rank until . . . action and waive automatic forfeitures for a period of six months" so he could continue to provide financial support to his dependent minor children and his current spouse. On 21 November 2014, the convening authority deferred the reduction in rank, mandatory forfeitures *and adjudged forfeitures* until the date of action and delayed decision on the request for waiver of automatic forfeitures until action. On 12 February 2015, in the clemency submission, Appellant reasserted his request that the convening authority waive automatic forfeitures. There is no mention of any further action involving the adjudged forfeitures.

Both the SJAR and the Addendum recommended that the adjudged sentence be approved and the automatic forfeitures be waived. The convening authority followed the SJA's advice and approved the adjudged sentence and waived the automatic forfeitures.

Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.28.7 (6 June 2013), explains:

> The convening authority must defer, suspend, mitigate or disapprove all or part of adjudged total forfeitures in order to waive any amount of mandatory forfeitures. Mandatory forfeitures can be waived for the benefit of the accused's dependents only to the extent adjudged forfeitures are not in effect. See *United States v. Emminizer*, 56 M.J. 441 (C.A.A.F. 2002).

The convening authority's action waiving the automatic forfeitures in this case clearly articulates his intent to waive what he believed were the only remaining forfeitures associated with the sentence. The error stems from the omission in the SJAR and the Addendum that to waive the automatic forfeitures, the convening authority needed to suspend or disapprove the adjudged forfeitures. We find the SJA's failure to advise the convening authority to take ameliorative action on adjudged forfeitures while seemingly waiving automatic forfeitures was plain error that materially prejudiced Appellant's substantial right. *See United States v. Escobar*, 73 M.J. 871, 877-78 (A.F. Ct. Crim. App. 2014).

"[T]he Courts of Criminal Appeals have broad power to moot claims of prejudice . . . ." *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998). In the case of plain error in the SJAR, R.C.M. 1106(c)(6) provides that "appropriate corrective action shall be taken by appellate authorities without returning the case for further action by a convening authority." We, therefore, take corrective action that eliminates the prejudicial effect of the error and determine that the adjudged total forfeitures of pay and allowances should not be approved. *See United States v. Cook*, 46 M.J. 37, 39-40 (C.A.A.F. 1997).

As such, our reassessed sentence is confinement for 29 years, a dishonorable discharge, reduction to E-1, and a reprimand.

We have given individualized consideration to this Appellant, his conduct, his military career and accomplishments, and the other relevant matters within the record of trial, including considering that his guilty plea may be the first step toward his rehabilitation. Appellant's reassessed sentence is not inappropriately severe for his multiple crimes.

*Conclusion*

The findings of guilt of Specification 3 of Additional Charge I and Specification 4 of Additional Charge III are set aside and those specifications are dismissed with prejudice. The findings of guilt of Additional Charge IV and its specifications are set aside and dismissed with prejudice. The finding of guilt of the greater offense of aggravated sexual conduct with a child as alleged in specification 2 of Additional Charge I is set aside.

The findings of guilt as to Specification 1 of Additional Charge I, the lesser-included offense of abusive sexual contact with a child in Specification 2 of Additional Charge I, and Additional Charge I are affirmed. The findings of guilt as to Specification 3 of Additional Charge III and of Additional Charge III are affirmed. The findings of guilt as to the specifications of Second Additional Charges I and II and as to Second Additional Charges I and II are affirmed.

The findings of guilt, as modified, and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred with regard to the affirmed findings and sentence. Articles 59(a) and 66(c), UCMJ. Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of Court

ACM 38790