**H. K. SMALLWOOD, Jr., Petitioner,**

v.

**Clark M. CLIFFORD, Secretary of Defense, Respondent.**

**Habeas Corpus No. 113–68.**

United States District Court
District of Columbia.
June 25, 1968.

Daniel A. Rezneck, of Washington, D. C., for petitioner.

David G. Bress, U. S. Atty., Alfred L. Hantman, Oscar Altshuler and Thomas C. Green, Asst. U. S. Attys., of Washington, D. C., for respondent.

## OPINION

CURRAN, Chief Judge.

On May 3, 1968, petitioner, a Specialist Fourth Class in the United States Army stationed in the Republic of Korea, was permitted to file in this court *in forma pauperis* a *pro se* petition for a writ of habeas corpus. Petitioner alleges that he is being illegally detained by officials of the United States Army in the Republic of Korea. He was initially placed in pretrial confinement on February 29, 1968, after having been implicated in the murder of a female Korean national which occurred off post in the early morning hours of February 28, 1968. Prior to his arrest, petitioner had been identified at a line-up by two eye-witnesses, who claimed he was the victim's companion at the approximate time of her death. Petitioner had also reportedly violated the curfew regulations when he returned to the post in the early morning hours of February 28, 1968.

On March 11, 1968, pursuant to the provisions of the present Status of Forces Agreement between the Republic of Korea and the United States, the Korean Minister of Justice notified the Commander, United States Forces, Korea, that the Korean Government intended to exercise its primary right of jurisdiction over Specialist Smallwood on charges of murder and arson. On March 21, 1968, petitioner was also formally charged by the United States military authorities with violating Article 118(2) (unpremeditated murder) and Article 92 (failure to obey lawful general regulation) of the Uniform Code of Military Justice. Thereafter, on April 25, 1968, petitioner was indicted by the Seoul District Prosecutor, Republic of Korea. While awaiting trial by the Korean authorities, petitioner has been incarcerated at the United States Army Stockade at ASCOM City, Korea. Proceedings in the Korean courts began on June 4, 1968. Pursuant to the terms of the existing Status of Forces Agreement, petitioner will remain in the custody of the American military authorities pending final disposition of the criminal charges in the Korean court.

On May 27, 1968, local counsel for petitioner filed a motion for a temporary

restraining order in Civil Action No. 1154–68 requesting the court to issue an order restraining respondent from releasing, transferring or making petitioner available to the Korean authorities for trial. The motion was denied on the same date. A notice of appeal was filed on May 28, 1968, after which the appellate court heard argument. On May 29, 1968, the United States Court of Appeals for the District of Columbia Circuit ordered that, " * * * petitioner's aforesaid motion is granted only to the extent of precluding the transfer of petitioner to the custody of the authorities of the Republic of Korea pending ultimate disposition of * * * Habeas Corpus case No. 113–68 * * * " (No. 21,981).

Petitioner asserts that respondents do not have legitimate authority to release him to the Republic of Korea for trial by a Korean court. His argument to this end may be summarized as encompassing two major points:

1. The United States-Republic of Korea Status of Forces Agreement of 1966[1] was not approved by the United States Government in a constitutionally acceptable manner;

2. The fair trial guarantees in the United States-Republic of Korea Status of Forces Agreement are insufficient in law and practice to protect the petitioner against violations of his Fourteenth Amendment due process rights.

Under his first major point, petitioner maintains that the internal law of the United States requires that international agreements regarding foreign jurisdiction over American forces stationed abroad be approved either expressly or impliedly by the Senate, and that the Senate did not so approve the United States-Republic of Korea Status of Forces Agreement of 1966. He further asserts that the President and the Secretary of State exceeded their authority by approving the Status of Forces Agreement without Senatorial consent, and that when both the Constitution and the Uniform Code of Military Justice provide the method of trial of servicemen abroad, this method cannot be altered by Executive Agreement. Finally, petitioner claims that neither the Uniform Code of Military Justice nor the Manual for Courts-Martial makes any provision for the delivery of an American serviceman to a foreign government for trial.

Under his second major argument that the fair trial guarantees of the Status of Forces Agreement are insufficient, petitioner asserts that the nature of the Korean system of criminal justice is such that trial before a Korean court is inherently violative of the Fourteenth Amendment requirements of due process. Additionally, the petitioner asserts that the recommendation by the Article 32 Investigating Officer[2] that the charges be dismissed for lack of evidence may preclude trial by a Korean court under authority of Article XXII, Paragraph 8, of the Status of Forces Agreement itself.

In order to resolve the questions presented by this petition, it is necessary to examine the background of the United States-Republic of Korea Status of Forces Agreement. Following the outbreak of hostilities in the summer of 1950, the United States and Korea entered into the Taejon Agreement (July 12, 1950) which provided that "the United States courts-martial may exercise exclusive jurisdiction over members of the United States Military Establishment in Korea".[3] The Korean Mutual Defense Treaty, signed October 1, 1953, and ratified by the United States Senate on January 26, 1954, states:

The Republic of Korea grants, and the United States of America accepts, the right to dispose United States land,

---

1. T.I.A.S. 6127, —— U.S.T. ——.

2. Uniform Code of Military Justice, Article 32.

3. T.I.A.S. 3012, 5 U.S.T. 1408.

air and sea forces in and about the territory of the Republic of Korea as determined by mutual agreement.[4] Finally, the United States-Republic of Korea Status of Forces Agreement signed by representatives of both governments on July 9, 1966, provides that Korea will retain jurisdiction over American servicemen accused of offenses committed within its territory and punishable by its laws. Exceptions to this general rule are found when the event also constitutes an offense solely involving United States citizens or property, or an offense arising out of an act or omission done in the performance of official duty.[5]

The question before the Court is whether the Status of Forces Agreement is valid and binding on both countries in view of the Taejon Agreement of 1950 grant of exclusive jurisdiction to the United States over servicemen in Korea.

 It should be stated at the outset that under the applicable principles of international law, Korea should have exclusive jurisdiction to punish offenses committed within its territory, unless it expressly or impliedly consents to surrender its jurisdiction.[6] Thus, the Status of Forces Agreement embodied the consent of the Korean government to a diminished role in the enforcing of its territorial laws. The United States did not waive any jurisdiction over crimes committed within *its* territory. The Agreement constituted a unilateral waiver by Korea of criminal jurisdiction in

certain limited cases. Where a crime falls outside the area covered by this limited waiver, primary jurisdiction is maintained by the nation within which the crime occurred.[7] Ratification of this principle by the United States Senate is clearly unnecessary, since Senate approval could have no effect on a grant of jurisdiction by the Republic of Korea, which the United States could not rightfully claim.

 Petitioner asserts that jurisdiction over American servicemen who violate Korean criminal statutes must be determined by the Taejon Agreement of 1950, which granted United States courts-martial exclusive jurisdiction over such servicemen. A reading of this Agreement, however, shows that it must be considered in light of the wartime conditions existing at the time.[8] Furthermore, the Korean government clearly intended to retract its grant of jurisdiction contained in the Taejon Agreement when it entered into the Status of Forces Agreement of 1966. The right of the United States to exercise jurisdiction under the Taejon Agreement was at all times conditioned on the consent of the Republic of Korea to continue that Agreement. When Korea's consent was withdrawn (by the 1966 Agreement), the rights of the United States under the Taejon Agreement ceased.

The Korean Mutual Defense Treaty of 1953 states that the disposition of American forces shall be "determined by mutual agreement".[9] It is not unreason-

4. T.I.A.S. 3097, 5 U.S.T. 2368.

5. Article XXII, Para. 3(a).

6. Wilson v. Girard, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957); The Schooner Exchange v. McFadden, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812) (dictum); Wright v. Cantrell, 44 N.S.W.St.R. 45 (Su.Ct.1943) (dictum); cf. Kinsella v. Krueger, 351 U.S. 470, 76 S.Ct. 886, 100 L.Ed. 1342 (1956), rev'd on other grounds sub nom., Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (dictum); Cozart v. Wilson, 98 U.S.App.D.C. 437, 236 F.2d 732 (1956).

7. See *e. g.* May v. Wilson, 153 F.Supp. 688, D.D.C., Feb. 2, 1956 (reprinted in Hearings Before the Committee on Foreign Affairs of the House, 84th Cong. 2d Sess., Pt. 2, at 652 (1956).

8. * * * The Ministry of Foreign Affairs and the Government of the Republic of Korea will understand that *in view of prevailing conditions, such as the infiltrations of North Koreans into the territory of the Republic,* United States Forces cannot be submitted, or instructed to submit, to the custody of any but United States Forces, 5 U.S.T. 1408 (emphasis added).

9. 5 U.S.T. 2368, 2373, Article IV.

able to hold that the 1966 Agreement is just such a determination as envisioned by the 1953 Treaty.[10] There is nothing in the legislative history of the Treaty to indicate that the Senate intended to prohibit future agreements regarding the status of forces.[11]

■ Petitioner states that both the Constitution and the Uniform Code of Military Justice provide the method of trying servicemen abroad and that this method cannot be altered by an Executive Agreement. This contention has merit only in instances in which there has been no violation of the criminal code of a foreign state. However, when the offense is against the laws of another nation, primary jurisdiction lies with that nation, and only when it expressly or impliedly waives its jurisdiction will the provisions of the Uniform Code of Military Justice apply. The *Girard* case [12] holds that the primary right of jurisdiction belongs to the nation in whose territory the serviceman commits the crime.

■ Petitioner's contention that his trial by a Korean court is barred by Article XXII, Paragraph 8, of the 1966 Agreement is without merit. The recommendation of the Article 32 Investigating Officer is just that—a recommendation and not a trial as contemplated by the above-cited section of the Agreement. No decision has been made by the American military authorities with regard to whether the petitioner will be court-martialed.[13] The pretrial investigation involved here is not to be mistaken for the requirement of Paragraph 8 of Article XXII of the Agreement.

■■ Petitioner's final contention is that the fair trial guarantees of the Agreement of 1966 are insufficient to protect his due process rights under the Fourteenth Amendment. He alleges that the nature of the Korean system of criminal justice is inherently violative of the Fourteenth Amendment requirements of due process. To this end, petitioner asserts several unsubstantiated shortcomings allegedly inherent in Korean courts. The numerous provisions of the Status of Forces Agreement pertaining to the protection of the rights of the accused are ignored by petitioner.[14]

Furthermore, the petitioner fails to point out to the satisfaction of this court by what authority the United States may dictate to a sovereign nation the procedure to be followed by that nation in the exercise of its primary jurisdiction over alleged violators of its criminal laws. Under international law, the United States is without authority to infringe upon that jurisdiction. The Supreme Court in *Girard*[15] was surely aware that the due process safeguards of the Japanese courts differed from those of the courts of the United States, yet the Court did not look upon this as a fatal defect in determining that Japan had the power to try Girard. Realistically, the question resolves itself into a balancing of the national interest justifying the stationing of troops abroad against the possibility of any deprivation of constitutionally protected rights at the hands of foreign local law which does not conform to American standards. It is the determination of this court that the national interest outweighs any other considerations. To argue that under the applicable rule of

---

10. The correct title of the 1966 Agreement supports this belief: "Agreement under Article IV of the Mutual Defense Treaty between the United States of America and the Republic of Korea, Regarding Facilities and Areas and the Status of United States Armed Forces in the Republic of Korea".

11. 100 Cong.Record 782–798, 815–819; 83d Congress, 2d Sess. (1954).

12. 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957).

13. Respondent's Return and Answer to Rule to Show Cause, page 11.

14. Article XXII, Para. 9, of the United States-Republic of Korea Status of Forces Agreement. T.I.A.S. 6127.

15. 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957).

international law, visiting forces retain jurisdiction is to close one's eyes to the historical fact that this matter is no longer left up to the implications of law but is carefully expressed in agreements which are explicit qualifications of consent to station visiting forces.

The rule to show cause is discharged and the petition for a writ of habeas corpus is dismissed.