*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
KISOR, GROSS, and HARRELL
Appellate Military Judges

―――――――――――――

## UNITED STATES
*Appellee*

**v.**

## Angel A. TUCKER
Damage Control Fireman (E-3), U.S. Navy
*Appellant*

## No. 202400071

―――――――――――――

Decided: 30 July 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Benjamin B. Garcia

Sentence adjudged 5 December 2023 by a general court-martial tried at Fleet Activities Yokosuka, Japan, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for fifteen months, and a bad-conduct discharge.[1]

For Appellant:
*Lieutenant Benjamin M. Cook, JAGC, USN*

―――――――――――――

[1] Appellant received 95 days of confinement credit. The convening authority reduced the adjudged 15-month sentence to confinement by six months.

For Appellee:
*Major Mary C. Finnen, U.S. Marine Corps*

Senior Judge HARRELL delivered the opinion of the Court, in which Senior Judge KISOR and Senior Judge GROSS joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

HARRELL, Senior Judge:

A military judge convicted Appellant, consistent with his pleas, of two specifications of wrongful distribution of controlled substances, one specification of wrongful exportation of a controlled substance, and two specifications of wrongful introduction of controlled substances onto a vessel used by the armed forces in violation of Article 112a, Uniform Code of Military Justice (UCMJ); and two specifications of conspiracy to commit the same in violation of Article 81, UCMJ.[2]

Appellant asserts three assignments of error (AOE): (1) Did the military judge err in considering Appellant's request for pretrial confinement credit to be a "waived motion" as opposed to awarding pretrial confinement credit pursuant to *United States v. Allen*, *United States v. Rock*, and Department of Defense Manual 1325.07 (DoDM 1325.07); (2) Was the trial defense counsel ineffective for not insisting the request for pretrial confinement credit was nonwaivable and required to be granted under *United States v. Allen, United States v. Rock*, and DoDM 1325.07, as opposed to Rule for Courts-Martial 305(k); and (3) Should the Entry of Judgment be corrected to list the segmented confinement terms awarded to run concurrently for each specification?[3] We find no prejudicial error and affirm.

---

[2] 10 U.S.C. §§ 912a, 881.

[3] We heard oral argument on AOEs 1 and 2 on 20 November 2024.

## I. BACKGROUND

In the face of a maximum punishment including 105 years of confinement for a slew of drug offenses committed in Yokosuka, Japan, and aboard USS *Ronald Reagan* (CVN 76), Appellant agreed to plead guilty to them all in exchange for a limitation on adjudged confinement of 12 to 18 months—with the promise of an additional six months lopped off after informing against his coconspirators and others—and a guarantee of no dishonorable discharge. He made another concession to secure this comparatively favorable outcome: he agreed to, and did, waive all waivable motions. The issues we consider here derive from that provision.

Before entering the promised pleas of guilty, civilian defense counsel provided a bench memorandum to the military judge, in which the Defense requested "that the Court grant 106 days of pretrial confinement credit for the period of Foreign Criminal Jurisdiction confinement between 18 May 2023 and 31 August 2023."[4] As detailed in the memorandum and its enclosures, on 18 May 2023, Appellant's commanding officer ordered him into confinement, first aboard the *Ronald Reagan* for a day and then the Commander Fleet Activity, Yokosuka, Pretrial Confinement Facility. The written confinement order noted "Foreign Criminal Jurisdiction Confinement" as the type of confinement, and for the "OFFENSES/CHARGES OF UCMJ ARTICLES VIOLATED": "Violation of the UCMJ, Article 112a - Wrongful use, possession, introduction, and distribution of Lysergic Acid Diethylamide (LSD), a schedule I controlled substance."[5]

Commander, U.S. Naval Forces Japan/Navy Region Japan appointed a Foreign Criminal Jurisdiction Confinement Hearing Officer to conduct a hearing regarding the propriety of continued confinement. The appointing order stated:

> Commanding Officer, USS RONALD REAGAN (CVN 76) has ordered [Appellant] into confinement pursuant to his pending charges by the Japanese Authorities. The Commanding Officer states that he took this action to fulfill the Unites States' treaty obligations under reference (a) [Agreement under Article VI of the Treaty of Mutual Cooperation and Security between the United States of America and Japan, Regarding Facilities and Areas and the Status of Forces Agreement of the United States

---

[4] App. Ex. XIII at 7.

[5] App. Ex. XIII at 17.

Armed Forces in Japan (SOFA)] and that this is not pretrial confinement under reference (d) [Manual for Courts-Martial].[6]

In a memorandum to the Hearing Officer, Appellant's Commanding Officer wrote that probable cause exists to conclude that Appellant committed drug offenses "triable by the host country's court of law" and that confinement of Appellant "is necessary because it is foreseeable that he will engage in further misconduct that will damage diplomatic relations between the United States and the host country."[7] Following a hearing on 23 May 2023, the Hearing Officer ordered that FCJ confinement continue.

Appellant remained in confinement after Japanese authorities relinquished jurisdiction, but on 1 September 2023, the basis changed from FCJ confinement to Rule for Courts-Martial (R.C.M.) 305 pretrial confinement. All told, as stated in the bench memorandum:

> The record reflects the basis for the first 106 days was Foreign Criminal Jurisdiction pending investigation and a prosecutorial decision by Japanese authorities related to the same underlying misconduct before this court. The remaining 95 days were based on pretrial confinement for the instant trial under Rule for Courts-Martial 305."[8]

The bench memorandum immediately continued, "*The characterization above is not disputed*, but whether [Appellant] should receive judicial credit for the first period."[9] He should receive that credit, as argued in the memorandum, because:

> [A]s a matter of fundamental fairness and equity, the procedural irregularities regarding his confinement were an abuse of discretion, warranting day-for-day administrative credit under R.C.M. 305(k). [Appellant] asserts that an arbitrary date – 1 September 2023 – wherein the accused remained confined in the same Navy facility, by the same Navy official, based on the same evidence and the same underlying conduct, should not deprive him of lawful credit for the previous 106 days while confined.[10]

---

[6] App. Ex. XIII at 23.

[7] App. Ex. XIII at 19.

[8] App. Ex. XIII at 4.

[9] App. Ex. XIII at 4 (emphasis added).

[10] App. Ex. XIII at 4.

Additionally, although initially disclaiming any violation of Article 13, UCMJ, which prohibits punishment before trial, the memorandum continued:

> These abuses[] may also be considered unlawful pretrial confinement under U.C.M.J., Article 13 inasmuch as the government failed to strictly adhere to its Treaty and regulatory guidance while administering the Foreign Criminal Jurisdiction. Herein, the government, through its procedural negligence, intentional or otherwise, subjected [Appellant] to 106 days of pretrial confinement for which credit in the instant hearing is warranted.[11]

Upon invitation of the military judge to make any motion before entering pleas, civilian defense counsel explained:

> Before entering pleas, I'd just like to note a little more substance of the . . . [R.C.M.] 802 conference that we had. In sentencing, basically premised on case law, established case law, for example, *United States v. Carter*, 74 M.J. 204, allows the defense to present evidence of the factors in pretrial confinement that the accused endured, and therefore, ask for sentencing credit in that forum. We intend to do so, and at that time, we submitted a bench memorandum . . . to educate the court a little bit rather than just simply tossing an argument out and provide some . . . factual legal background from the request that we made. The substance of the 802, trial counsel was concerned that we have a provision in our plea agreement to not waive [sic] any motions. . . . [T]he intent was to not raise any motions, but ethically, I do believe due diligence requires that the conditions of his confinement be brought to the attention of the military judge and that we do ask the military judge to consider that factor. How the military judge considers it, whether it's day-for-day credit or simply a factor in sentencing, obviously is within the discretion of the court. Therefore, we intended to present it at sentencing and we submitted the bench memorandum to support a legal basis for the facts that we will be arguing in sentencing. That said, our intent, again, is to make sure that this is properly before the

---

[11] App. Ex. XIII at 6.

court during the sentencing phase because the government as-
serted that it was perhaps a motion. It is our intent not to raise
that as a motion but, again, to present it in sentencing.[12]

The military judge responded that he did "not understand [the bench mem-
orandum] as being filed as a motion," and Appellant entered pleas of guilty.
The bench memorandum and the issue of FCJ confinement repeatedly came
up throughout the remainder of the proceeding. The military judge reviewed
the bench memorandum during a recess after the providence inquiry, and he
explained after resuming on the record:

> [F]rom the court's view, this is a motion that presumably would
> have been filed absent the waiver of motions regarding the abuse
> of discretion that occurred and the imposition of FCJ confine-
> ment without a proper basis. From the court's view, this is a
> waived motion, and as a result, it's not going to engage in an
> analysis to analyze an abuse of discretion. That having been
> said, from the court's view, [Appellant] has been in confinement
> for two large periods certainly tied to these alleged offenses, and
> what's more, as a relevant factor by actions of the U.S. authori-
> ties. So certainly from the court's view in terms of sentencing,
> considering appropriate sentencing, the period of time in con-
> finement that was for FCJ purposes is still relevant for the
> court's consideration when weighing the appropriate sentence in
> this case, but will not be ruling on the motion or making a find-
> ing regarding abuse of discretion . . . ."[13]

Civilian defense counsel agreed:

> [T]he defense position always was that we understand the
> waiver of motions. We affirmatively, as my client will discuss
> here shortly with Your Honor, waived motions. We understood
> that this was actually what we were waiving, but because of this
> time was actually served by my client, we did need to raise it in

---

[12] First File of Official Audio R. at 19:13–20:52 (Dec. 5, 2023). We note with frus-
tration that the certified transcript of the proceedings is replete with instances of "[in-
audible]," though in the portions of the record we quote, those matters are perfectly
audible when listening to the audio recording of the proceedings. When (easily) deci-
phering the "[inaudible]" portions, we also noted transcription errors, which we have
corrected in the quoted portions of the record to which we cite the official audio instead
of the transcript, cited as "R." We may not be so gracious with our time in other cases
that reflect a half-hearted effort by those involved in post-trial processing.

[13] Third File of Official Audio R. at 00:58–01:49 (Dec. 5, 2023).

the sentencing phase, and the intent of the bench memo was primarily to educate the court as to the applicable rules that would apply, recognizing that Your Honor will consider that time frame as relevant for the purposes of sentencing, then we understand your ruling, and we're happy the judge will at least consider that during sentencing.[14]

Later came a discussion of the relevant provision of the plea agreement in which Appellant "specifically agree[d] to waive all motions except those that are non-waivable pursuant to R.C.M. 705(c)(1)(B) or otherwise":[15]

> MJ: [W]hen you were considering waiving these motions, did your counsel explain this term of the agreement and the consequences to you?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: You understood you were giving up those potential motions and that litigation in this case?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: And recognizing that you did not originate this side of the provision, did you agree to this provision in order to receive what you believe was a beneficial agreement?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: Now your counsel has offered Appellate Exhibit XIII which is a request for relief or in other words, a motion, regarding your confinement what was styled foreign criminal jurisdiction confinement by the convening authority in this case for the period prior to 1 September for the several months, I think from May to September that you were confined in the initial stages of this investigation. Now you recognize that absent a---that motion is one of the motions that is waived under the plea agreement, correct?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: What that means is that although the motion talks about, for example, the potential abuse of discretion

---

[14] Third File of Official Audio R. at 02:17–02:53 (Dec. 5, 2023).

[15] App. Ex. IX at 6.

made by the convening authority and others in their actions and asked for a request based on that, this court will not be hearing that motion and that means that the court will not make a determination as to whether or not the convening authority committed an abuse of discretion when they took their action for that initial foreign criminal jurisdiction confinement. Do you understand that?

[Appellant]: Yes, Your Honor.

MJ: And likewise, because you're waiving it, that means the appellate court will also not be reviewing it for the potential legal error the convening authority might have or might not have committed in that initial period of confinement. Do you understand that?

[Appellant]: Yes, Your Honor.

MJ: Now the facts of your prior confinement and the facts surrounding the investigation and the legal consequences you suffered as part of that are still relevant to the court, but potentially you could get more, if you were successful in the motion, more definite legal redress and benefit from having that motion litigated and having an abuse of discretion declared and then getting sort of guaranteed day-for-day of confinement or other remedies based on an error of the convening authority. Do you understand that?

[Appellant]: Yes, Your Honor.

MJ: Do you understand you are giving that up in effect by waiving the motions?

[Appellant]: Yes, Your Honor.

MJ: And again, are you doing that because you believe you're receiving the benefit of a beneficial agreement as a result of that?

[Appellant]: Yes, Your Honor.[16]

The matter came up again after the military judge accepted Appellant's guilty pleas:

---

[16] R. at 127–29.

MJ: Defense counsel, has the accused been punished in any way that would constitute illegal pretrial punishment under Article 13?

CDC: We believe certainly the period of time under foreign criminal jurisdiction from the 18th of May through the 31st---we believe the period of "foreign criminal jurisdiction" from the period of 18 May through the 30th of August may constitute Article 13 punishment as set forth in the Bench Memorandum which you're only considering for the purposes of sentencing, so we will simply address that matter before Your Honor for sentencing purposes.

MJ: Understood and on that, two points. One, just to reconfirm, you are waiving that motion for illegal pretrial punishment pursuant to the FCJ confinement, correct?

CDC: Correct.

MJ: And then two, has the accused been punished in any other way that would constitute illegal pretrial punishment?

CDC: No, Your Honor. Just as a point of verification of *United States v. Carter*, 74 M.J. 204, it gives the defense the opportunity to present evidence related to Article 13 during the sentencing hearing, notwithstanding there not being a motion filed.

MJ: Absolutely tracking that, yes.

CDC: That's one of the tactics that we've employed to get this information before you, recognizing that we did waive the motions, that we knew under the case law we could still present that evidence to you, which we intend to do.[17]

And then, at a crucial moment:[18]

MJ: Trial counsel, . . . what do you calculate the number of days of pretrial confinement credit?

---

[17] Third File of Official Audio R. at 26:11–27:23 (Dec. 5, 2023).

[18] *See United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019), discussed *infra.*

> TC: Including today, Your Honor, 96 days of confinement.
>
> MJ: Defense counsel, do you agree?
>
> CDC: Yes, Your Honor, I concur.[19]

Finally, civilian defense counsel discussed the matter at length in his sentencing argument:

> I will talk about the 105 [sic] days that he did serve while pending this foreign criminal jurisdiction. As Your Honor read the Bench Memorandum, and I understand you ruled that that would be considered a motion and would have been waived so you won't consider that, but let's still talk about the facts. The 18th of May the United States Navy put him in pretrial confinement, and I know it's not R.C.M. 305, but I don't have another name for it, placed him in pretrial confinement. He remained there at the same facility through today. There's this mythical line in the sand on the 1st of September where poof, now you're only here because it's R.C.M. 305. It doesn't matter. The rest of it doesn't count. That's an arbitrary line that just defies logic and fundamental fairness as a matter of law, I would submit. Moreover, it was based on the same charges, drugs and drug distribution. The charges didn't change. The confinement facility didn't change. The original investigation suspected only U.S. offenses. The only charges that they were suspecting him of importing and selling and distributing drugs onboard a ship. The treaty requires as soon as they know that there's foreign involvement or Japan has jurisdiction over this, they have to notify Japanese. . . . [C]learly the Japanese government didn't ask for him to be confined, because they didn't know anything about it. So when you look at this, we placed him in for "foreign criminal jurisdiction," that was merely a function of convenience at the time and regardless of how it can be interpreted under the law, regardless of how it's defined, the fact of the matter is you had a U.S. Navy Sailor sitting in a U.S. Navy brig for 105 [sic] days and that credit should count, if by no other means, the 105 [sic] days comes off the top end of the spectrum of 18 months . . . .[20]

---

[19] R. at 139–40.

[20] Fifth File of Official Audio R. at 29:46–31:52 (Dec. 5, 2023).

Civilian defense counsel concluded his argument with a request for a sentence to confinement of 12 to 14 months. The military judge sentenced Appellant to 15 months of confinement, reduction to E-1, and a bad-conduct discharge, and then he announced 95 days of confinement credit.[21] After Appellant fulfilled his promise of cooperation, the convening authority reduced the 15-month sentence to confinement by six months.

## II. DISCUSSION

### A. Appellant affirmatively waived any motion for credit for foreign criminal jurisdiction confinement.

The crux of Appellant's argument is that the military judge erroneously ruled that the request at trial for 106 days of confinement credit for the time spent in FCJ confinement "was a 'waived motion' under the plea agreement, despite the fact that [DoDM 1325.07] *requires* credit to be awarded for each day spent in pretrial confinement (a decision that is neither discretionary nor subject to a motion, let alone waiver, by Appellant)."[22] We disagree.

"Whether an appellant has waived an issue is a legal question that this Court reviews de novo."[23] "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'"[24] Stated differently, "A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law."[25] "While we review forfeited issues for plain error, we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal."[26]

---

[21] This amount differs by a day from that agreed upon by the parties earlier in the proceeding, but Appellant concedes, "While the count given during the colloquy was 96 days, the Statement of Trial Results and Entry of Judgment reflect a correct count of 95 days based on the period reflected on the charge sheet (1 September to 5 December 2023)." Appellant's Brief at 10 n.38.

[22] Appellant's Brief at 2–3.

[23] *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citing *Haynes*, 79 M.J. at 19).

[24] *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

[25] *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (internal quotations omitted) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)).

[26] *Id*. (internal quotations omitted) (quoting *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005)).

Our analysis of the general matter of FCJ confinement need not go beyond recognizing that it is a thing, and it is not the same as confinement imposed pursuant to R.C.M. 305. Considering the same Status of Forces Agreement at issue here and interpreting a provision thereof—"The custody of an accused member of the United States armed forces or the civilian component over whom Japan is to exercise jurisdiction shall, if he is in the hands of the United States, remain with the United States until he is charged by Japan"[27]—the U.S. Court of Military Appeals (CMA) concluded in *United States v. Murphy*:

> The power of the commander to confine a serviceperson at the request of a foreign government for the purpose of the exercise of foreign criminal jurisdiction is included within the definition of 'custody' which comes from the treaties in force and exists independently of the Uniform Code of Military Justice."[28]

Two judges (of the court's three) took it a step further in concurrence:

> International obligations assumed by the United States under agreements with Japan authorized American military authorities to confine appellant. . . . Confinement under such circumstance may be imposed by a military commander on the basis of a request from the host country or, *even without a request*, on the basis of the commander's determination that confinement of the accused is necessary to assure his presence for foreign criminal

---

[27] Agreement Under Article VI of the Treaty of Mutual Cooperation and Security between the United States of America and Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan, Japan-U.S., Art. XVII, para. 5(c), Jan. 19, 1960, 11 U.S.T. 1652, https://tile.loc.gov/storage-services/service/ll/lltreaties//lltreaties-11-2/lltreaties-11-2.pdf.

[28] 18 M.J. 220, 233 (C.M.A. 1984). The court found support for its conclusion in federal case law, including this:

> [W]hen the offense is against the laws of another nation, primary jurisdiction lies with that nation, and only when it expressly or impliedly waives its jurisdiction will the provisions of the Uniform Code of Military Justice apply. [*Wilson v. Girard*, 354 U.S. 524 (1957),] holds that the primary right of jurisdiction belongs to the nation in whose territory the serviceman commits the crime.

*Id.* (quoting *Smallwood v. Clifford*, 286 F. Supp. 97, 101 (D.D.C. 1968)).

proceedings, pursuant to the obligations of the United States to the host country.[29]

With that basic framework, we now confirm what was made plain at trial: Appellant, through counsel and directly himself, repeatedly and affirmatively waived any claim to credit for the time spent in FCJ confinement. Appellant now attempts to maneuver around this waiver since the word "*Allen*"[30] was not uttered by anyone at trial. That may be, but we look at the exchanges "concerning confinement credit in the broad sense,"[31] and not with a squint for certain talismans. The issue of FCJ confinement was front and center throughout the proceeding, and Appellant disclaimed credit for it again, again, again, and again. That Appellant now raises another theory for credit that he views as more viable than those mentioned at trial does not undo his affirmative waiver.

In *United States v. Haynes*, responding to a belated claim by the appellant for *Pierce* credit,[32] the U.S. Court of Appeals for the Armed Forces (CAAF) focused on this colloquy typical of most courts-martial:

---

[29] *Murphy*, 18 M.J. at 238 (Everett, C.J., with whom Fletcher, J., joined, concurring) (emphasis added). Notably, they also added:

> Because authority for confinement based on pending foreign charges is not found in the Uniform Code and the servicemember is not confined by reason of any suspected violation of the Code, no reason exists to include this time in computing pretrial confinement for purposes of [speedy trial]. Moreover, the time in confinement on foreign charges affords no basis for credit on the sentence to confinement adjudged subsequently by a court-martial. *See United States v. Allen, supra.* However, the existence of such confinement is a permissible factor for a court-martial to consider in determining an appropriate sentence, ascertaining the prejudice to an accused because of delays in commencing his trial by court-martial, or deciding the voluntariness of a statement made while the accused is in such confinement.

*Id.* at 237 ( cleaned up).

[30] "In *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984), [the CMA] interpreted a Department of Defense Instruction as requiring day-for-day credit against confinement for time an accused spends in lawful pretrial confinement." *United States v. King*, 58 M.J. 110, 112–13 (C.A.A.F. 2003).

[31] *Haynes*, 79 M.J. at 20.

[32] "In *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989), [the CMA] provided a mechanism for appropriately crediting prior NJP. An accused who is convicted at court-martial for the same offense for which NJP previously was imposed may request credit for any and all nonjudicial punishment suffered: day-for-day, dollar-for-dollar,

> MJ: And, Counsel, based upon the information on the charge sheet, the accused is to be credited with 107 days of pretrial confinement credit; is that correct?
>
> TC: Yes, Your Honor.
>
> DC: Yes, Your Honor.[33]

That waived claim to more, CAAF said:

> By answering in the affirmative when asked if he agreed with the proposed amount of pretrial confinement credit due, Appellant affirmatively acknowledged that he was not entitled to any additional confinement credit.
>
> This is not simply a case where defense counsel failed to lodge an objection. Instead, the military judge directly asked defense counsel if he agreed with the proposed amount of confinement credit and defense counsel expressly indicated that he did. As such, we see defense counsel's agreement as akin to a statement of "no objection," which we have previously recognized may count as an affirmative waiver. *See United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017); *United States v. Campos*, 67 M.J. 330, 333 (C.A.A.F. 2009).
>
> . . . .
>
> Since *Pierce* credit is a type of confinement credit, we think it appropriate to treat the exchange between the military judge and counsel as one concerning confinement credit in the broad sense. It is clear that the military judge sought to understand the amount of credit due to Appellant and explicitly invited Appellant to question his calculation of the credit due. Although offered the opportunity to contradict or add anything, defense counsel declined to do so and instead affirmatively agreed that Appellant was entitled to 107 days of credit.[34]

We have the same—and much, much more—to find affirmative waiver in this case. Courts have since applied *Haynes* in various contexts to find waiver

---

stripe-for stripe." *United States v. Bracey*, 56 M.J. 387, 388 (C.A.A.F. 2002) (cleaned up).

[33] *Haynes*, 79 M.J. at 19.

[34] *Id.* at 19–20.

of confinement credit,[35] and we reach the same conclusion in the context of FCJ confinement. Granted, in some of those cases, the courts ignore the waiver promptly after finding it, but as discussed further below, we do not follow suit.

We have laid the groundwork to now directly respond to the issue raised in the AOE: the military judge did not err in considering the matter waived pursuant to the "waive all waiveable motions" term of the plea agreement. The foundation of Appellant's argument to the contrary is a few lines of dicta from *United States v. Rock*: "Pretrial confinement, or its equivalent, cannot be bargained away in arriving at a sentence limitation. For it is the Secretary of Defense himself who has mandated that the armed forces comply with federal practice and credit pretrial confinement."[36] Those lines from *Rock* relied upon *United States v. Allen*, whose own foundation has eroded somewhat over the years. As we have previously said:

> Although Appellant is correct that the central holding of *Allen* remains intact—that an accused should receive credit for time spent in pretrial confinement—it is inaccurate to conclude that the circumstances when it was decided remain the same. In the thirty-five plus years since *Allen*, the DoD has indeed provided more guidance regarding confinement credit, particularly through its implementation of the DoD Sentence Computation Manual [DoDM 1325.07]. Among other changes, while the previous 1968 instruction specifically incorporated the Department of Justice's sentence computation procedures [prompting the *Allen* court to reach the conclusion it did], the updated version pointedly makes no such mention. Instead the current manual dictates that "the judge will direct credit for each day spent in

---

[35] *See United States v. Speight*, No. 202000099, 2021 CCA LEXIS 133, at *5–6 (N-M. Ct. Crim. App. Mar. 30, 2021) ("Although the question in *Haynes* revolved around *Pierce*, and not *Allen*, credit, it is clear that our superior court viewed the matter more broadly. . . . Following the *Haynes* Court's reasoning, we hold that Appellant affirmatively waived the issue of pretrial confinement credit at trial."); *United States v. Tyndall*, No. 201900096, 2019 CCA LEXIS 476 (N-M. Ct. Crim. App. Nov. 27, 2019) (finding, but then disregarding, waiver of pretrial confinement credit for time spent in civilian pretrial confinement); *United States v. Turk*, No. ARMY 20210104, 2022 CCA LEXIS 728, at *3-6 (A. Ct. Crim. App. Dec. 13, 2022) (same).

[36] 52 M.J. 154, 157 (C.A.A.F. 1999) (citing *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984)).

pretrial confinement or under restriction tantamount to confinement . . . for crimes for which the prisoner was later convicted."[37]

Since 2004, the applicable manual has provided—more narrowly than when *Allen* was decided—that "[t]he judge will direct credit for each day spent in pretrial confinement or under restriction tantamount to confinement for crimes for which the prisoner was later convicted."[38] This cannot be read so broadly to commission the military judge to embark on a solo quest, directing briefs, production of evidence and witnesses, and whatever else may be necessary to sniff out the possibility of pretrial restraint warranting sentencing credit—irrespective of the accused's position on the matter. For example, when a charge sheet reflects a period of pretrial restriction, this need not prompt a demand from the military judge for evidence of the conditions thereof so that the military judge may assess, absent any motion, whether it was tantamount to confinement and thus deserving of confinement credit. The law does not require this level of paternalism, despite the Sentence Computation Manual's language that "[t]he judge will direct credit for each day spent . . . under *restriction tantamount to confinement* for crimes for which the prisoner was later convicted."[39] In fact, in a post-*Rock* and DoDM 1325.07 world, we have held that *Mason* credit[40] is waivable pursuant to a plea agreement.[41]

In that case, *United States v. Nye*, we considered an argument similar to that raised here, specifically whether "the military judge erred by misinter-

---

[37] *Speight*, 2021 CCA LEXIS 133, at *9–10 (cleaned up).

[38] Dep't of Def. Man. 1325.07, *DoD Sentence Computation Manual*, para. C2.4.2. (Jul. 27, 2004 & Ch. 3, Sep. 26, 2018) [DoDM 1325.07]. *See also* R.C.M. 1102(b)(2)(B) ("If the accused was earlier ordered into confinement *under R.C.M. 305*, the accused's sentence shall be credited one day for each day of confinement already served." (emphasis added)). Though inapplicable here, we note that the current iteration of the Sentence Computation Manual replaces the word "tantamount" with "equating." Dep't of Def. Man. 1325.08, *DoD Sentence Computation Manual*, sec. 3, para. e.(5) (Jul. 12, 2024).

[39] DoDM 1325.07, para. C2.4.2. (emphasis added).

[40] "'*Mason*' credit, named after [the CMA's] order in *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985), extends *Allen* credit to 'pretrial restriction equivalent to confinement.'" *Rock*, 52 M.J. at 156.

[41] *See United States v. Nye*, No. 201600362, 2018 CCA LEXIS 13, at *9 (N-M. Ct. Crim. App. Jan. 18, 2018) ("[T]he PTA's 'waive all waivable motions' provision was valid, and . . . the *Mason* credit motion was knowingly and voluntarily waived.").

preting the pretrial agreement (PTA) and refusing to rule on whether the appellant was entitled to *Mason* credit."[42] After the defense presented evidence of the conditions of Nye's pretrial restriction during sentencing, the military judge stated that "he would take all the evidence into account, including the conditions of pretrial restriction when 'formulating an appropriate sentence, one way or another. Whether *Mason* credit exists or not, that evidence is going to be there.'"[43] The military judge then asked whether the defense "was moving the court for *Mason* credit because he thought doing so would violate the PTA."[44] Nye's trial defense counsel responded in a manner similar to Appellant's present argument:

> Well, Your Honor, the defense position—and certainly we are not—do not want to make any motions in violation of the terms of the pretrial agreement. That is not our intent; however, our position is that this is not a motion, but rather it is equivalent to *Allen* credit that—the ruling in *Mason* simply extended the application of credit to restriction tantamount to confinement. Therefore, because in—in *U.S. v. Rock,* that cannot be bargained away by pretrial agreement, that it is a matter of credit and not something that a motion need be provided for. That aside, as you've said, Your Honor, we ask you to take it into consideration on sentence, and—and we'll do that through argument. But that—that's our position.[45]

The military judge again noted the "waive all waivable motions" provision of the PTA and responded:

> I know that the defense often kind of goes and presents information that would normally be presented in a motion. What the court asked earlier is, is there any illegal pretrial restraint or confinement, and the answer to that is no. And so I don't believe that the court has an immediate duty to say that this is restriction tantamount to confinement or not. The case law that I've looked up about *Mason* credit deals with—with people affirmatively coming to court and saying "this is *Mason* credit; give me *Mason* credit;" . . . . So I'm not inclined to make a ruling this is restriction tantamount to confinement, which essentially

---

[42] *Id.* at *2.

[43] *Id.* at *6.

[44] *Id.* (internal quotation marks omitted).

[45] *Id.*

flips this into *Allen* credit, day for day, unless the defense stands up and says "I want to make this motion," at which point I'd look over at the government and say, "Well, does this break the PTA? What are you all going to do?" So I'm going to take everything—all this information that's come at me in formulating a sentence, but I don't think the court, at this time, needs to make a decision whether this is or isn't *Mason* credit. . . .[46]

Nye's trial defense counsel again confirmed that she "did waive any Article 13 motion," and "[i]n light of this discussion, the military judge reasoned that he did not need to rule on the issue because the [trial defense counsel (TDC)] was not actually making a motion for *Mason* credit."[47] All good, we held:

> The TDC ultimately was clear that she was not raising the Article 13 motion. She secured a beneficial PTA sending the case to a special court-martial by, *inter alia*, agreeing to waive all waivable motions. She understood that raising an Article 13 motion risked the deal and the appellant potentially going to general court-martial for his offenses. The colloquy between the military judge and TDC makes it clear that she understood the meaning and effect of the waiver provision—the voluntary relinquishment of a known right—while making a good faith effort nonetheless to ensure the military judge gave appropriate credit for the appellant's pretrial restriction. The appellant is unable to produce any case supporting his position that *Mason* credit is an unwaivable motion, and the CAAF has recognized otherwise [in *United States v. McFadyen*, 51 M.J. 289, 290–91 (C.A.A.F. 1999)].

> Therefore, we agree with the government that the PTA's "waive all waivable motions" provision was valid, and that the *Mason* credit motion was knowingly and voluntarily waived. After consideration of the entire record we are also satisfied that the military judge properly considered both the duration of pretrial restraint and the conditions of that restraint in determining an appropriate sentence; eliminating any potential prejudice to the appellant.[48]

---

[46] *Id.* at *7–8.

[47] *Id.* at. *8.

[48] *Id.* at *9–10.

So, despite Nye's claim that *Rock* precluded the bargaining away of a motion for confinement credit, we concluded otherwise. In doing so, we relied in part on *McFadyen,* in which the CAAF said:

> RCM 705(c)(1)(B) does not specifically prohibit an accused from waiving his right to make a motion for sentencing credit because of unlawful pretrial punishment.
>
> This Court has held that an accused may offer to waive several significant rights as part of a pretrial agreement. *See United States v. Rivera,* 46 M.J. 52 (1997) (accused may waive evidentiary objections); *United States v. Weasler,* 43 M.J. 15, 19 (1995) (where unlawful command influence in the preferral of charges was alleged, it was permissible for the accused to offer to waive unlawful command influence in a pretrial agreement); *United States v. Burnell,* 40 M.J. 175 (C.M.A. 1994) (waiver of trial by court-martial composed of members); *United States v. Gansemer,* 38 M.J. 340 (C.M.A. 1993) (waiver of administrative board is permissible). There is nothing sufficiently different about the right to be free from unlawful pretrial punishment that persuades us to reach the conclusion that it cannot be waived.
>
> . . . .
>
> The judge conducted an appropriate inquiry into the voluntariness of the pretrial agreement. Appellant does not contest the voluntariness of the waiver. Moreover, during sentencing, the military judge allowed appellant to fully describe the circumstances of his confinement . . . . In awarding a sentence to confinement, the judge was able, if he wished, to take into account the nature of appellant's pretrial confinement in determining the amount of confinement appropriate as a punishment for his offenses. Under these circumstances, we see no reason why appellant should be prevented from waiving his Article 13 rights.[49]

Building upon *McFadyen* and *Nye,* we conclude there is nothing sufficiently different between illegal pretrial punishment and restriction tantamount to

---

[49] 51 M.J. 289, 290–91 (C.A.A.F. 1999). The Rule mentioned, R.C.M. 705(c)(1)(B), provides, "A term or condition in a plea agreement shall not be enforced if it deprives the accused of: the right to counsel; the right to due process; the right to challenge the jurisdiction of the court-martial; the right to a speedy trial; the right to complete presentencing proceedings; the complete and effective exercise of post-trial and appellate rights."

confinement on the one hand and FCJ confinement on the other that persuades us to reach the conclusion that credit for FCJ confinement cannot be waived pursuant to a plea agreement as like the others.[50] The CAAF has recognized that an accused "may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution."[51] The same goes for non-constitutional rights afforded as a matter of presidential policy.[52] And, "[i]n the absence of an explicit prohibition, a party may knowingly and voluntarily waive such a nonconstitutional right in a [plea agreement]. Although the President has prohibited the waiver of certain fundamental rights in a [plea agreement],"[53] waiver of credit for FCJ confinement is not among them. Accordingly, "Appellant's express waiver of any waivable motions waived claims of" FCJ confinement credit, "and extinguished his right to raise [this] issue[] on appeal."[54]

The authorities relied upon by Appellant do not support the broad proposition that credit is automatically due in every instance in which an accused is confined for whatever basis, particularly when the facts and applicable law may be disputed by the parties, the resolution of which requires findings of fact and conclusions of law to be made by the authority charged with directing any credit due—the military judge. That is where waiver comes in. We have no findings or conclusions from the military judge to sort out the differing views of the parties for the simple reason that Appellant waived the issue.[55] In fact, the record contains no retort from the Government—much less any evidence to back it up—to the Defense's veiled claims at trial of irregularities of the FCJ

---

[50] R.C.M. 305(k) (redesignated in the current edition of the Manual for Courts-Martial as R.C.M. 305(l)) credit is likewise waivable pursuant to a plea agreement. *See United States v. Forbes*, 77 M.J. 765, 774 (N-M. Ct. Crim. App. 2018); *United States v. Farrell*, No. 201700011, 2018 CCA LEXIS 293 at *9 (N-M. Ct. Crim. App. June 14, 2018).

[51] *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)).

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] We acknowledge that but for waiver, we would review de novo the question whether Appellant is entitled to pretrial confinement credit. *United States v. Smith*, 56 M.J. 290, 292 (C.A.A.F. 2002). We also acknowledge our authority to engage in and direct below additional fact-finding.

confinement.[56] That is because the Government had no reason to retort.[57] That is because Appellant waived the issue.

The CAAF has explained:

> The purpose of the so-called raise-or-waive rule is to promote the efficiency of the entire justice system by requiring the parties to advance their claims at trial, where the underlying facts can best be determined. . . .
>
> . . . .
>
> Of course, we recognize that a Court of Criminal Appeals has the unique power to determine for itself, from the existing record, what the facts of a case are. *See* Art. 66(c), UCMJ, 10 U.S.C. § 866(c)(2002). It also has the power, in certain circumstances, to conduct limited fact-finding of its own. *See United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). But these powers fall far short of the power the parties themselves have to develop fully the factual record at trial through compulsory process and confrontation -- tools that are not available in a Court of Criminal Appeals. Thus, the reasons for applying waiver in the military justice system are just as compelling as those in the civilian system.[58]

In doing so, the CAAF followed the U.S. Supreme Court's lead:

> Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues which they have had no opportunity to introduce evidence. . . . Recognition of this general principal has caused this

---

[56] And irregularities there may be, but, again, the issue is waived.

[57] We decline to presume, as Appellant asks of us, that the Government said all it could possibly say on the general matter of FCJ confinement in response to a motion that *was* made before referral, a motion for release from confinement. Appellant's Reply Brief at 14.

[58] *King*, 58 M.J. at 114.

Court to say on a number of occasions that the reviewing court should pass by, without decision, questions which were not urged [below].[59]

Accordingly, we recognize the waiver for what it is—an extinguishment of Appellant's right to complain on appeal[60]—and, ever cognizant of our Article 66, UCMJ, duties and *United States v. Chin,*[61] our review of the entire record provides no compulsion to disregard it.

## B. Appellant's trial defense counsel did not provide ineffective assistance.

### 1. Law

"Allegations of ineffective assistance of counsel are reviewed de novo."[62] To prevail on a claim of ineffective assistance of counsel, an appellant must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[63] The appellant "must show that counsel's representation fell below an objective standard of reasonableness."[64] "Judicial scrutiny of counsel's performance must be highly deferential[,]" and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."[65] Second, an appellant "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[66] An appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[67] "[A] court need not determine whether counsel's performance

---

[59] *Id.* (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)).

[60] *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017).

[61] 75 M.J. 220 (C.A.A.F. 2016).

[62] *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024) (citing *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)).

[63] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[64] *Id.* at 688.

[65] *Id.* at 689.

[66] *Id.* at 687.

[67] *Id.* at 694.

was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[68]

This two-part *Strickland v. Washington* test applies in the context of a guilty plea, but it is modified a bit:

> "In the guilty plea context, the first part of the *Strickland* test remains the same -- whether counsel's performance fell below a standard of objective reasonableness expected of all attorneys. *Hill v. Lockhart*, 474 U.S. 52, 56-58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The second prong is modified to focus on whether the 'ineffective performance affected the outcome of the plea process." *Id.* at 59. It is not necessary to decide the issue of deficient performance when it is apparent that the alleged deficiency has not caused prejudice. *See Loving v. United States*, 68 M.J. 1, 2 (C.A.A.F. 2009). . . .
>
> "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (citation omitted).
>
> . . . .
>
> When an appellant argues that counsel was ineffective for erroneously waiving a motion, it makes sense to deny the claim if the appellant would not be entitled to relief on the erroneously waived motion, because the accused cannot show he was harmed by not preserving the issue. *See United States v. Cornelius*, 37 M.J. 622, 626 (A.C.M.R. 1993). However, the accused is wrong to assume the opposite is true -- merely being entitled to relief on an erroneously waived motion does not by itself satisfy the prejudice analysis in the guilty plea context. Appellant also must satisfy a separate, objective inquiry -- he must show that if he had been advised properly, then it would have been rational for

---

[68] *Id.* at 697.

him not to plead guilty. *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).[69]

*2. Analysis*

Appellant argues that should we conclude that the issue of FCJ confinement credit is waived, "the trial defense counsel was ineffective for not properly characterizing the credit as mandatory under [DoDM 1325.07] and therefore non-waivable."[70] Our resolution of the first AOE—that credit for FCJ confinement is waivable—obliges resolution of this fallback argument in similar fashion. Even reading Appellant's complaint more broadly—that his trial defense counsel was ineffective for failing to move for credit for his FCJ confinement— we come to the same result adverse to Appellant, for he has failed to establish prejudice.

We considered a similar issue in *United States v. Farrell*.[71] There, the appellant claimed ineffective assistance of counsel in failing to move for R.C.M. 305(k) credit, and we concluded that he did not satisfy *Strickland*'s prejudice prong:

> The government's case against the appellant was formidable. . . . The TDC and the appellant, in apparent recognition of the strength of the government's case and the appellant's punitive exposure, single-mindedly pursued a PTA. . . . The appellant was facing over 80 years' confinement but negotiated a PTA limiting his confinement exposure to 30 months. The appellant has made no showing that he was improperly advised as to the propriety of his continued pretrial confinement under RCM 305 or any credit therefor, or that he would have abandoned his hard-fought PTA to preserve any related issue.[72]

---

[69] *United States v. Bradley*, 71 M.J. 13, 16–17 (C.A.A.F. 2012) (footnote omitted).

[70] Appellant's Brief at 30.

[71] No. 201700011, 2018 CCA LEXIS 293 (N-M. Ct. Crim. App. June 14, 2018).

[72] *Id.* at *7–8. *See also United States v. James*, No. 1485, 2023 CCA LEXIS 481 at *10–12 (C.G. Ct. Crim. App. Nov. 15, 2023) ("Appellant also fails to meet *Strickland*'s second prong: that but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. He does not even allege that but for his counsel's errors, he would have elected to withdraw from the agreement and plead not guilty or plead guilty without the benefit of an agreement. *See United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012). And the risk was real that

The same analysis applies here with equal force, and we reach the same conclusion. Appellant secured a favorable plea agreement, greatly limiting his punitive exposure, in part by agreeing to waive all waiveable motions. He makes no claim, much less shows a reasonable probability, that but for his trial defense's counsel's alleged failings, he would have opted instead to forgo pleading guilty pursuant to the plea agreement and take his chances at a contested trial.

Appellant emphasized in his brief that others implicated in the drug ring received credit for FCJ confinement during their own, separate court-martial proceedings, some of which were presided over by the same military judge as here. However, "an appellant is not entitled to relief based on the idiosyncrasies of the particular decisionmaker."[73] Additionally, "evidence about . . . a particular judge's sentencing practices[] should not be considered in the [*Strickland*] prejudice determination.[74] We also note that Appellant has made no claim of sentence disparity.

We do not discount the gravity of being confined for more than 100 days, a period for which Appellant *may* have received credit had the issue not been waived.[75] However, the blunt reality is that Appellant has long since been released from confinement after serving his sentence to it, and the only relief he now requests of us is to set aside his bad-conduct discharge. We would not do so even if we found error and prejudice for the following reasons. First, any possible prejudice in not receiving sentence credit is mitigated by the fact that the military judge—*as requested by Appellant*—considered the duration of the FCJ confinement when determining an appropriate sentence. We have no doubt that the military judge did exactly that. The scope and seriousness of Appellant's offenses, some of which were committed in a host country, would have reasonably justified the maximum sentence to confinement of 18 months allowed by the plea agreement, but the military judge adjudged a sentence closer to the range requested by civilian defense counsel when taking the FCJ

---

if he filed a motion for additional confinement credit without renegotiating his agreement to waive all such motions, the Government would withdraw. It is entirely speculative that any additional confinement credit he might have gotten through filing a motion would have exceeded additional confinement he might have been adjudged absent an agreement limiting it.").

[73] *United States v. Furth*, 81 M.J. 114, 118 (C.A.A.F. 2021) (quoting *Strickland*, 466 U.S. at 695) (cleaned up).

[74] *Strickland*, 466 U.S. at 695.

[75] We take no position on whether he should have since nothing remains of the matter for our review.

confinement into account. In fact, the military judge specifically denied a suggestion from trial counsel during sentencing argument to consider the FCJ confinement as already baked into the negotiated sentence limitations.[76] Second, as in *United States v. Harris*, "[i]n light of the offenses of which Appellant was convicted, we conclude that granting Appellant such relief would be disproportionate to any harm he may have suffered."[77] Setting aside the bad-conduct discharge "would provide the appellant with a windfall he is not due."[78]

## C. The Entry of Judgment requires correction.

Lastly, Appellant asserts that we should correct the Entry of Judgment since it fails to specify the segmented terms of confinement and that they are to run concurrently. The Government and we agree. We also note that the Entry of Judgment: (1) reflects an incorrect date of the offense for Specification 5 of Charge I; (2) fails to reflect the date of the offense for Specification 2 of Charge II, as required by R.C.M. 1111(b)(1)(A) and *United States v. Wadaa*;[79] and (3) fails to reflect the convening authority's reduction of the adjudged sentence to confinement by six months, as required by R.C.M. 1111(b)(2). Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[80] In accordance with R.C.M. 1111(c)(2), we modify the Entry of Judgment and direct that it be included in the record.

---

[76] R. at 197–99.

[77] 66 M.J. 166, 169 (C.A.A.F. 2008). *See also United States v. Zarbatany*, 70 M.J. 169, 170 (C.A.A.F. 2011) ("[R]elief is not warranted or required where it would be disproportionate to the harm suffered or the nature of the offense.").

[78] *United States v. Kinzer*, 56 M.J. 741, 744 (N-M. Ct. Crim. App. 2002).

[79] 84 M.J. 652 (N-M. Ct. Crim. App. 2024).

[80] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

### III. CONCLUSION

After careful consideration of the record, briefs, and argument of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[81]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[81] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.

# United States Navy–Marine Corps Court of Criminal Appeals

| UNITED STATES | NMCCA NO. 202400071 |
|---|---|
| v. | **ENTRY** |
| | **OF** |
| **Angel A. TUCKER** | **JUDGMENT** |
| **Damage Controlman Fireman** | |
| **(E-3)** | |
| **U.S. Navy** | *As Modified on Appeal* |
| *Accused* | *30 July 2025* |

On 5 December 2023, the Accused was tried at Fleet Activities Yokosuka, Japan, by a general court-martial, consisting of a military judge sitting alone. Military Judge Benjamin Garcia presided.

## FINDINGS

The following are Damage Controlman Fireman Tucker's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge:**  **Violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.**

> *Plea:* Guilty.
> *Finding:* Guilty.

**Specification 1:**  **Distribution of lysergic acid diethylamide (LSD) on divers occasions between February 2022 and May 2023.**

> *Plea:* Guilty.
> *Finding:* Guilty.

**Specification 2:**  **Distribution of psilocybin mushrooms, a Schedule I controlled substance, on or about April 2023.**

> *Plea:* Guilty.
> *Finding:* Guilty.

**Specification 3:** **Exportation of lysergic acid diethylamide (LSD) on divers occasions between February 2022 and April 2023.**

> *Plea:* Guilty.
>
> *Finding:* Guilty.

**Specification 4:** **Introduction of lysergic acid diethylamide (LSD) onto a vessel used by the armed forces, with the intent to distribute, on divers occasions between February 2022 and April 2023.**

> *Plea:* Guilty.
>
> *Finding:* Guilty.

**Specification 5:** **Introduction of psilocybin mushrooms, a Schedule I controlled substance, onto a vessel used by the armed forces, with the intent to distribute, on or about April 2023.**

> *Plea:* Guilty.
>
> *Finding:* Guilty.

**Charge II:** **Violation of Article 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 881.**

> *Plea:* Guilty.
>
> *Finding:* Guilty.

**Specification 1:** **Conspiracy to distribute lysergic acid diethylamide (LSD) in March 2023.**

> *Plea:* Guilty.
>
> *Finding:* Guilty.

**Specification 2:** **Conspiracy to export, introduce, and distribute controlled substances on divers occasions between November 2021 and March 2023.**

> *Plea:* Guilty.
>
> *Finding:* Guilty.

## SENTENCE

On 5 December 2023, a military judge sentenced Damage Controlman Fireman Tucker to the following:

**Reduction to pay grade E-1.**

**Confinement for a total of 15 months.**

2

*Specification 1 of Charge I: confinement for 14 months.*

*Specification 2 of Charge I: confinement for 12 months.*

*Specification 3 of Charge I: confinement for 14 months.*

*Specification 4 of Charge I: confinement for 14 months.*

*Specification 5 of Charge I: confinement for 14 months.*

*Specification 1 of Charge II: confinement for 13 months.*

*Specification 2 of Charge II: confinement for 15 months.*

The terms of confinement will run concurrently.

**A bad-conduct discharge.**

Damage Controlman Fireman Tucker was credited with 95 days of pretrial confinement credit.

In accordance with Rule for Courts-Martial 1109(e), pursuant to the recommendation of the trial counsel, the convening authority reduced the adjudged sentence to confinement by six months.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

3